COMMONWEALTH vs. ROBERT J. BROWN
(and five companion cases[1]).

Suffolk.    January 14, 1974. — March 25, 1974.

Present: HALE, C.J., ROSE, GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Charge to jury; Exceptions: general exception.
   *Evidence,* Other offense.    *Error,* Whether error harmful.    *Witness,* Impeachment.

A general exception by the defendants in a criminal case to comments
   on the evidence by the judge in his charge to the jury brought
   before this court the full context of certain comments to which
   there were specific exceptions.   [79]
Although comments on the evidence by the judge in his charge to the
   jury in a criminal case might have been unnecessarily extensive,
   there was no merit in a contention by the defendants that the
   judge marshaled the evidence in an argumentative manner favor-
   able to the Commonwealth and prejudicial to the defendants, nor
   merit in objections of the defendants to particular comments by
   the judge.   [79-81]
The fact that on the record of conviction of one of a criminal offense
   the Massachusetts Defenders Committee appeared as counsel was
   sufficient to show that the defendant had had counsel in such case
   and to permit introduction of the record subsequently at another
   criminal trial of the same defendant for the purpose of impeaching
   him as a witness.   [81-82]
Where the prosecution at a criminal trial proffered on cross-examina-
   tion of a defendant, for the purpose of impeaching him, the record
   of his conviction of a prior offense, as to which it appeared that
   after waiving counsel he had pleaded guilty and had been given a
   suspended sentence and had been placed on probation, and that
   subsequently he had been surrendered and sentenced, the circum-
   stance that it did not appear whether he had had or had waived

--------

[1] Of the companion cases, one is by the Commonwealth against
Robert J. Brown, two are by the Commonwealth against Thomas
Johnson and two are by the Commonwealth against Walter Tyler.

counsel in the surrender proceeding was immaterial and did not preclude introduction of the record. [82]

Where the record of a conviction in a criminal proceeding bore a notation indicating that the defendant had been represented by counsel in a District Court, but did not indicate whether counsel continued to represent him in the Superior Court, it was error subsequently, in another criminal proceeding against the same defendant, to admit the record in evidence for the purpose of impeaching the defendant as a witness on cross-examination; but the error was harmless in view of the evidence and the proper admission of three other records of convictions of the defendant for impeachment. [83]

SIX INDICTMENTS found and returned in the Superior Court on October 5, 1972.

The cases were tried before *Roy, J.*

*Robert V. Greco* for the defendants.

*Thomas F. Reilly,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.  The defendants were severally indicted on charges of unarmed robbery of one Ater and of assault and battery by means of a dangerous weapon (a shoe) on Ater.  They were tried before a jury and were convicted and sentenced.  The cases are here on bills of exceptions, each alleging error in the judge's charge.  Additionally, the defendant Tyler's bill alleges error in the admission against him of records of past convictions, contending that the Commonwealth failed to show that he had had the assistance of, or had waived, counsel in the proceedings in question.

The jury heard evidence that at about 6:00 A.M. on September 9, 1972, Ater, a resident of Boston's South End, who was sightless in one eye, was on his way to an employment office when he was approached by the defendants.  The defendants Brown and Johnson seized and held Ater while Tyler beat him.  One of Tyler's blows struck Ater above his blind eye and caused a laceration which bled profusely.  They then tore the pockets off his trousers and took a five dollar bill and three one dollar bills.  They also took an envelope con-

taining his welfare card. The defendants then kicked Ater and left.

Ater observed the defendants walk away through a drive-in garage and then made his way to a police station, where he reported that he had been attacked by "three colored boys." He informed the police of the direction in which his assailants had headed and said that he thought they intended to go to the nearby Pine Street Inn. (Ater, who resided at the Pine Street Inn, had previously seen the defendants in that area.) The police did not ask for any further description at that time. They took Ater in a cruiser and proceeded to search for the defendants. After five to ten minutes the three were seen together, walking across a vacant lot. They were identified by Ater as his assailants. The three were then arrested by the police, taken to the station and searched. Johnson was found to have a five dollar bill and three one dollar bills. Three one dollar bills and an envelope containing Ater's welfare card were found on Tyler. When asked where he got the envelope, Tyler answered, "Well, let me think. Oh, I found it." The "arrest sheet" which should have listed and described any items taken from an arrested person and retained by the police did not indicate that any property or money had been taken from Tyler. There was testimony that property found on an arrested person but returned to him would not be recorded on the sheet.

Brown and Tyler testified in their own behalf, and each denied robbing or assaulting Ater. They further testified that all three defendants had met outside the employment office and at about 5:50 A.M. had headed for a certain restaurant several blocks away to have breakfast. (There was rebuttal testimony that there were two restaurants within a block of the employment office which were open at that hour.) After they had gone eight or nine blocks from the employment office they were arrested. Brown denied ever having seen a welfare card or ever having seen Ater before he had stepped from

the cruiser. Tyler denied that an envelope had been taken from him by the police and also denied ever having seen Ater before the arrest. Further testimony was given by Johnson's sister to the effect that on September 9, 1972, Johnson was staying with her and that, prior to his leaving, she had given him a five dollar bill and five singles.

1. The defendants took exception generally to that portion of the judge's charge in which he commented upon the evidence, and specifically to the judge's words (as stated in their brief and bills of exceptions) that the defendants "were going to get breakfast, going their peaceful way" and "that the officer testified to the effect that on the arrest sheet the property belonging to the individuals was taken from them." The defendants also excepted to the charge on the ground that the judge ruled out any possibility that there could have been confusion as to where the envelope had come from when he stated "that someone had to be lying." The defendants contend that the judge in his charge marshaled the evidence in an argumentative and one-sided manner favorable to the Commonwealth and prejudicial to the defendants.

A general exception to a charge cannot be sustained (*Commonwealth* v. *Duncan,* 250 Mass. 405, 407 [1924]; *Commonwealth* v. *McDonald,* 264 Mass. 324, 335 [1928]) unless some substantial injustice plainly appears. *Callahan* v. *Fleischman Co.* 262 Mass. 437, 438 (1928). *Mansell* v. *Larsen,* 311 Mass. 607, 613-614 (1942). The general exception puts before us the full context of the portions of the judge's charge specifically excepted to. *Cahalane* v. *Poust,* 333 Mass. 689, 690 (1956). We have examined the portions of the charge included in the bill of exceptions to determine from them if the charge was argumentative, favorable to the Commonwealth, or prejudicial to the defendants. If the charge was any one of those, it would have resulted in substantial injustice.

At the outset the judge clearly informed the jury that it was their function alone to decide the facts from the

evidence and to determine what facts were important. He enjoined them not to regard any mention of evidence by him as an indication that he deemed such evidence important. Against this background the judge proceeded (perhaps to an extent unnecessary in this case) to call the jury's attention to contradictions in testimony and evidence. In each such instance, he pointed out to the jury that it was their burden to decide what evidence was credible and persuasive. *Commonwealth* v. *Gerald,* 356 Mass. 386, 389 (1969). In the course of those remarks the judge made the statements which were specifically excepted to. The words "were going to get breakfast, going their peaceful way" are a paraphrasing of part of the judge's summary of the defendants' narrations of the events of the morning prior to their arrest. The words indicate to us merely that the defendants had maintained that they had been going about their business in a quiet manner to the disturbance of no one. They do not necessarily imply sarcasm, as suggested by the defendants. Nor were references to the evidence taken from the other parts of the charge, when read in their full context, anything more than the judge's calling conflicting evidence to the jury's attention and leaving to them the conclusions to be drawn therefrom. It is well settled that the method and extent of the charge must be left to the discretion of the judge; he need not refer therein to all the evidence or to all the possible inferences. *Commonwealth* v. *Greenberg,* 339 Mass. 557, 583-584, 585 (1959). *Commonwealth* v. *Monahan,* 349 Mass. 139, 170-171 (1965). *Commonwealth* v. *Kelley,* 359 Mass. 77, 92 (1971).

The remaining specific objections relate to that part of the judge's instructions in which he summarized the testimony concerning the envelope and the welfare card in it.[2] We consider those instructions to have been unneces-

[2]The judge charged in part:

"Now, something is mentioned about these arrest sheets which are in evidence here and which you will have in the jury room. Is it

sarily detailed. However, contrary to the defendants' contentions, the judge did not tell the jury that there could be no mistake or confusion on the part of any witness, or that any witness must have lied. He did say, "You may well come to the conclusion that this testimony could not be mistaken in any way. You may well come to the conclusion that somebody is lying . . .." He did not indicate what version of the testimony the jury should accept or what his thoughts were as to the credibility of any part or parts of the testimony. See *Commonwealth v. Bettencourt,* 361 Mass. 515, 520-521 (1972). We conclude that the portion of the charge detailed in the bills of exceptions, viewed in its totality, was neither unfair nor partial. *Commonwealth v. Green,* 302 Mass. 547, 555-556 (1939). *Commonwealth v. Pettie,* 363 Mass. 836, 842-843 (1973). Cf. *Federal Natl. Bank* v. *O'Keefe,* 267 Mass. 75, 83 (1929).

2. During cross-examination of Tyler, records were introduced for impeachment purposes which showed that he had twice previously been convicted of armed robbery, once of robbery and once of unlawfully carrying a firearm. The judge admitted the four records in evidence over Tyler's objections. Tyler argues that the Commonwealth failed to meet its burden of showing

---

your recollection that Officer Tonsberg told you the manner in which those were made out, that only property of the defendant that was taken from him and was returned would be listed on that sheet, belts, any type of instrument that might be dangerous to a defendant which might be taken from him to be given back at a later time?

"Now, it is for you to determine whether or not it was reasonable or unreasonable, if this envelope was taken from Tyler, obviously not belonging to him, would it be reasonable or unreasonable to list that on the arrest sheet as something to be returned to Tyler at the outcome of this case? That's for you and you alone to say.

"Now, Tyler says that that never was on his person. Tonsberg says that he took it from Tyler's person when he was searched. You may well come to the conclusion that this testimony could not be mistaken in any way. You may well come to the conclusion that somebody is lying, either Tyler or Tonsberg, and that Tyler is right that it never came from his pocket. . . ."

either that he had had or that he had waived counsel
with respect to the four prior convictions.

As to such evidence, we have recently held that "[t]he
burden of proof is firmly placed on the prosecution" to
show that the witness whose credibility is attacked had or
had waived counsel at the prior proceedings. *Common-
wealth* v. *Barrett,* 1 Mass. App. Ct. 332, 336 (1973),
citing *Gilday* v. *Scafati,* 428 F. 2d 1027, 1029 (1st Cir.
1970), *Loper* v. *Beto,* 405 U. S. 473, 483 (1972), and
*Commonwealth* v. *Boudreau,* 362 Mass. 378, 381-382
(1972). Tyler's bill of exceptions incorporates by refer-
ence the four indictments and the clerk's notations on
them. We have examined each of them. Tyler concedes
that counsel is shown to have been present at all stages of
the proceedings on one of the indictments charging
armed robbery. On one of the other two indictments
charging robbery the name of the Massachusetts Defend-
ers Committee appears as counsel of record and on the
second (a 1961 indictment) it is indicated that Tyler,
having been informed of his right to counsel, elected to
proceed without counsel and that he had refused to sign
a waiver. The burden of the Commonwealth was satis-
fied with respect to those two indictments. *Common-
wealth* v. *Boudreau, supra,* at 382.

Tyler raises an additional contention with respect to
the use of the latter indictment, in which he had waived
counsel. Following his waiver in that case he had
entered a plea of guilty, was given a suspended sentence,
and was placed on probation. He was subsequently
surrendered and sentenced. It does not appear whether
he was represented by counsel or had waived such repre-
sentation at the surrender proceedings. A record of con-
viction upon which a suspended sentence was imposed
may properly be used for the purpose of impeachment.
See G. L. c. 233, § 21 (as amended by St. 1950, c. 426).
The subsequent surrender proceedings are not relevant to
the question raised by this exception.

The fourth indictment introduced against Tyler (for unlawful possession of a firearm) indicates the name and address of a lawyer followed by the notation "L. C." A line appears to have been drawn through this notation. It is not questioned that "L. C." stands for "lower court" and indicates that the lawyer named had represented the defendant in earlier proceedings in a District Court. It may well be, as the prosecuting attorney argues, that the line drawn through the notation indicates that the same lawyer continued to represent the defendant in the Superior Court. If it was the practice of the assistant clerks of the Superior Court sessions so to show such continued representation, such has not been shown by the record in this case, and we cannot notice it. We are of the opinion that the Commonwealth has not met its burden of proof as to this conviction. However, even though it may have been error to have admitted this evidence, we are satisfied beyond a reasonable doubt that it was harmless, in view of the evidence in this case and because the record in question was but one of four admitted for the purpose of impeachment. *Commonwealth* v. *Boudreau,* 362 Mass. 378, 382 (1972). See *Commonwealth* v. *Roy, ante,* 14, 21 (1974), citing *Chapman* v. *California,* 386 U. S. 18, 21-24 (1967), and *Milton* v. *Wainwright,* 407 U. S. 371, 372-373 (1972).

*Exceptions overruled.*