COMMONWEALTH *vs.* PAUL J. ELLISON. August 12, 1977. 1. The defendant's argument that there was no evidence of the city's bank account having been debited by the amounts reflected on the city's checks deposited in his account, and that his two motions for a directed verdict should therefore have been granted, loses sight of testimony by the accountant for the city of Boston as to the payroll account maintained by the city in the bank on which checks were drawn. (No argument is made that the evidence was insufficient to show that the proceeds of the checks were received by the defendant.) From this and the undisputed testimony that the cancelled checks were returned to the city by the bank, it is hard to see how the jury could have drawn any inference other than that the bank charged the city's account. The practice of a bank in reimbursing itself from the appropriate account when it cashes a check is routine and a matter of common knowledge. See *Commonwealth* v. *W. Barrington Co. Inc., ante,* 416, 419 (1977). The exact bookkeeping involved is not material. 2. The judge correctly instructed the jury during trial and in his charge that the alleged larceny was complete if and when the money, pursuant to a fraudulent scheme, came under the defendant's control, that no subsequent application of the money for the benefit of the city would exonerate the defendant and that the evidence that the defendant hired additional school committee personnel from his own funds was relevant

only to the issue of his continuing criminal intent. See *Commonwealth* v. *Harley,* 7 Met. 462, 466-467 (1844); *Commonwealth* v. *Coe,* 115 Mass. 481, 502-503 (1874); *Commonwealth* v. *Langley,* 169 Mass. 89, 95 (1897); *Commonwealth* v. *O'Connell,* 274 Mass. 315, 322 (1931); *Commonwealth v. Greenberg,* 339 Mass. 557, 574-575, 583-584 (1959). Those instructions were an adequate response to the defendant's requested instructions numbered twenty-five and twenty-six, as the defendant's assertion of his belief in the legality of the transaction was but another way of denying the requisite criminal intent. See *Commonwealth* v. *White, ante,* 483, 485-488 (1977). 3. Seven checks drawn on the defendant's personal account and marked H-1 through H-7 for identification could have had little if any probative value in establishing lack of such an intent at the times of the diversions of city funds into his account. The amount of each of those checks was substantially smaller than the amounts contemporaneously diverted. And had the defendant's motion to expand the record been allowed on appeal by adding seventeen earlier checks, despite his failure to have those checks marked for identification at trial or to file a motion until after the appeal had been heard, those checks would be subject to the same infirmity. Those checks and evidence which the defendant sought to develop from their admission would have been merely cumulative of testimony given by him and other witnesses and error, if any, from their exclusion was harmless. See *Commonwealth* v. *O'Neil,* 3 Mass. App. Ct. 768 (1975), and cases cited. The admission of the proffered evidence might well have hurt rather than helped the defendant's cause because of the lack of correlation between the amounts of money diverted by the defendant and those drawn from his personal account (assertedly for school committee purposes) and because the total amount of the checks excluded was only a fraction of the total claimed by the Commonwealth to have been unlawfully diverted but claimed by the defendant to have been expended from his own funds for additional personnel. 4. In offering the evidence described in his second, third and ninth assignments of error, the defendant did not make clear to the judge that it could have been relevant to the issue of the defendant's intent when he diverted the city's funds. See *Commonwealth* v. *Sheeran,* 370 Mass. 82, 86 (1976). The exclusion of the question dealt with in the fourth assignment, if not justified on the same ground, could not have prejudiced the defendant for its primary purpose (according to the assignment, read in conjunction with the defendant's offer of proof) was to establish that Schindler had worked in the office, a fact which the witness had already admitted during her cross-examination, and because Schindler herself later testified that she had been paid for her services from the defendant's personal funds. The evidence referred to in the thirteenth assignment, and in the ninth as well, related to a collateral matter and its exclusion was within the judge's discretion. See *Commonwealth* v. *Doherty,* 353 Mass. 197, 213-214 (1967), cert. den. 390 U. S. 982 (1968). The question treated in the tenth assignment was predicated on the untenable assumption that Crecco could have personal knowledge of alleged authorization given by Flynn to the defendant in Crecco's absence. See Leach & Liacos, Massachusetts Evidence 136 (4th ed. 1967), and cases cited. The attempt to impeach Crecco through the introduction of various checks is not included in the defendant's assignments of error. See *Commonwealth* v. *Ventura,* 294 Mass. 113, 125 (1936). 5. The testimony chal-

lenged in the seventh assignment was admissible to give meaning to the defendant's answer to the accusatory statement made by Flynn. *Commonwealth* v. *McGrath,* 351 Mass. 534, 538-540 (1967). *Commonwealth* v. *Earltop,* 372 Mass. 199, 201-202 (1977). The defendant's objection was only a general one (see *Commonwealth* v. *Rawlins,* 352 Mass. 293, 295 [1967]), and he failed to protect his rights by seeking a limiting instruction (see *Commonwealth* v. *Benjamin,* 369 Mass. 770, 773 [1976]). The exhibits complained of in the sixth, eleventh and sixteenth assignments were admissible whether or not Flynn had authorized the defendant to negotiate pay checks drawn to his order. The indictment charged the defendant with larceny from the city rather than from the payees of the checks issued by the city. For the same reason the twenty-sixth assignment of error must also fail. 6. Even if we were to agree with the defendant's interpretation of the judge's comments quoted in the twentieth assignment, any prejudice arising therefrom because of possible misconstruction by the jury was cured for the reason stated in *Commonwealth* v. *Festa,* 369 Mass. 419, 423 (1976). Nor was the portion of the charge referred to in the twenty-third assignment, considered in light of the judge's earlier remarks concerning the defendant's election to take the stand, and in view of the charge as a whole (see *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 720-721 [1974]), susceptible to the reading attributed to it by the defendant. Compare *Commonwealth* v. *Brown,* 2 Mass. App. Ct. 76, 79 (1974). 7. The remaining assignments are deemed to have been waived. *Commonwealth* v. *Grace,* 370 Mass. 746, 758 (1976).

*Judgment affirmed.*

*Christopher Dye (Monroe L. Inker* with him) for the defendant.
*Timothy P. O'Neill & Alvan Brody* for the Commonwealth.