COMMONWEALTH vs. JAMES LOUGEE.

Middlesex.    April 20, 1979. — September 18, 1979.

Present: KEVILLE, GOODMAN, & GREANEY, JJ.

*Larceny. False Pretenses. Practice, Criminal,* Directed Verdict.

At the trial of a defendant on a complaint charging him with larceny
from the Commonwealth under G. L. c. 266, § 30, the defendant was
entitled to a directed verdict where there was evidence merely that
his wife, in applying for and receiving benefits under the program
for Aid to Families with Dependent Children, stated falsely that the
defendant was not living at their home and no evidence that the
defendant knew of the misstatement. [355]

COMPLAINT received and sworn to in the First District
Court of Eastern Middlesex on January 20, 1976.

Upon appeal for trial by a jury of six, the case was tried
before *Lack, J.*

*Sumner H. Smith* for the defendant.

*Pamela L. Hunt,* Legal Assistant to the District Attor-
ney, for the Commonwealth.

GOODMAN, J. The defendant was convicted by a jury of
six in the Third District Court of Eastern Middlesex on a
complaint dated January 20, 1976, brought by the De-
partment of Public Welfare (department) charging him
and his wife with larceny from the Commonwealth (G. L.
c. 266, § 30) from January 1, 1975, to August 28, 1975. The
defendant's wife pleaded guilty before trial and the de-
fendant was tried alone. The case is here on the defend-
ant's bill of exceptions. See Mass.R.A.P. 1B(4), inserted
by 378 Mass. 926 (1979).

The bill of exceptions contains evidence of the follow-
ing: The defendant at all times material was married and
resided with his wife and their minor child. The defend-

ant was unemployed from January 18, 1975, to August 28, 1975, and applied for and received unemployment compensation of $101 per week. After the defendant became unemployed, his wife applied for and received benefits under the program for Aid to Families with Dependent Children (A.F.D.C.). In her application, she stated falsely that the defendant was not living at their home. She also failed to inform the department that the defendant was receiving unemployment compensation (though there is no indication that she was asked or that she knew it was significant[1]). She received benefits of $111 biweekly from January 1, 1975, to August 28, 1975.[2]

The theory of the Commonwealth apparently was, as put in its brief, that "the defendant combined with his wife to a concerted action to obtain money by false pretenses." But the Commonwealth points to nothing which can be said to permit an inference that the defendant "intentionally assisted the principal [his wife] in the commission of the crime ... sharing with the principal the mental state required for that crime." *Commonwealth* v. *Chinn*, 6 Mass. App. Ct. 714, 716 (1978), quoting from *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). There is no evidence that the defendant knew of his wife's misstatement or that he himself made any misstatement to the department or anyone else. Indeed, the evidence is devoid of any suspicious conduct by the defendant which might indicate that he knew that his wife was not entitled to benefits. Cf. *Commonwealth* v. *Beckett*, 373 Mass. 329, 342 n.7 (1977), and text to which it is appended. From the

---

[1] The bill of exceptions indicates merely that the defendant would not have been eligible if "the defendant was residing on the premises and receiving unemployment benefits." Whether either one of these conditions (and, if so, which one) would have negated eligibility is not set out. In the view we take of this case, we need not pursue the matter further.

[2] We can only conjecture why the payments stopped, if they did, on August 28 since it appears that an investigation was not begun until some time thereafter.

bill of exceptions it appears that he lived openly and normally with his wife at their home. A comparison with *Commonwealth* v. *Beckett,* on which the Commonwealth places primary reliance, is instructive. In that case there was evidence that the defendant *and* her husband knew that the welfare payments were affected by the husband's absence from the marital home (*id.* at 342), as well as evidence that both the wife and the husband had falsely represented to a department employee that the husband did not live with his wife (*id.* at 343).

In our case the only positive statement in the bill of exceptions relating the defendant to his wife's receipt of A.F.D.C. is: "The defendant knew that his wife was receiving welfare benefits and the defendant's name appeared as endorser of one of the welfare checks that his wife received from the department." But such knowledge obviously does not indicate any blameworthiness. Contrast *Commonwealth* v. *Schnackenberg,* 356 Mass. 65, 73 (1969). The receipt of welfare benefits is certainly not by "its very nature wrongful and detrimental to the public interest." *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 221 (1942). See *Commonwealth* v. *Beckett, supra* at 342 n.7. The evidence that the defendant endorsed one of the checks received by his wife draws no significance from any circumstance set out in the bill of exceptions. See *Commonwealth* v. *Chinn,* 6 Mass. App. Ct. at 717. Contrast *Commonwealth* v. *Ellison,* 5 Mass. App. Ct. 862 (1977).

Accordingly, the defendant's motion for a directed verdict at the end of the Commonwealth's case should have been allowed.

*Exceptions sustained.*
*Judgment for the defendant.*