Commonwealth vs. Paul K. Bishop.

Middlesex.  February 11, 1980. — March 25, 1980.

Present: Hale, C.J., Grant, & Nolan, JJ.

*Practice, Criminal,* Directed verdict.  *Evidence,* Fresh complaint.  *Rape.
Identification.*

At the trial of a defendant charged with assault with intent to rape an
    elderly woman, the victim's testimony identifying the defendant as her
    attacker, although repeatedly followed by a statement that "it looked
    like" the defendant, was sufficient to be considered as probative evi-
    dence, and, taken together with other evidence, was sufficient to war-
    rant the denial of the defendant's motion for a directed verdict.
    [471-473]
At the trial of a defendant charged with assault with intent to rape, the
    judge did not err in admitting evidence of fresh complaints which in-
    cluded identification of the attacker, and the judge properly instructed
    the jury on the purpose and use of such evidence.  [473]

Indictments found and returned in the Superior Court
on May 3, 1978.

The cases were tried before *Morse,* J.

*Brownlow M. Speer* for the defendant.

*Susan C. Mormino,* Assistant District Attorney, for the
Commonwealth.

Hale, C.J.  At about 1:30 a.m. on April 17, 1978, Anna
Hilliard (victim), an elderly woman, was attacked by an in-
truder in her apartment in Lowell.  The defendant was
charged as the intruder and was indicted, tried, and con-
victed of assault with intent to rape (G. L. c. 265, § 24, as
amended by St. 1974, c. 474, § 4) and breaking and entering
a dwelling in the nighttime (G. L. c. 266, § 14).  He has ap-
pealed and presents two issues: (1) that it was error to deny
his motion for directed verdicts, and (2) that it was error to
admit evidence of certain fresh complaints.  At trial the

defendant did not question that the victim had been attacked by someone intent on rape. Rather, the defendant's position at trial and on appeal has been that she was mistaken in identifying him as her attacker. We summarize the facts that could have been found on the evidence.

The victim was awakened at about 1:30 A.M. on April 17, 1978, by the sound of someone breaking in her front door. She arose from her bed and started toward the kitchen. The apartment was illuminated by a light which she had kept burning through the night. Before she reached the kitchen she was grabbed by an intruder, who demanded that she have sex with him. He threw her to the floor and throttled her. Her attacker left without having violated her sexually. The episode lasted less than ten minutes. After the intruder had left, she telephoned her son Fred; he arrived shortly and called the police. She was removed to a hospital in an ambulance.

About 10:30 that evening four Lowell police officers went to the home of the defendant's parents and asked for him. The woman who had admitted them pointed to a closet and told the officers, "He is hiding in there." The officers asked the defendant several times to come out; when he did, they arrested him and informed him of his rights. Before leaving with the police, the defendant asked the people in the apartment to "find out from Fred what's going on."

Fred and Yvonne Hilliard, the victim's son and daughter-in-law, managed the building in which the victim's apartment was located. On April 15, 1978, in the course of her duties as building manager, Yvonne had shown several vacant apartments to the defendant and two female companions. One of the apartments shown was located above the victim's. The intruder entered the building on the night of the incident by the back door to that upstairs apartment.

The victim was the only identifying witness.[1] She had known the defendant, who was related to her daughter-in-

---

[1] The victim made a statement positively identifying the defendant as her assailant to a police officer in the presence of Cynthia Morin, both of

law, for many years. Portions of the victim's testimony con-
cerning the identity of her attacker are set out in the
margin.[2]

---

whom testified at trial to that identification. That evidence was not of-
fered as an extrajudicial identification, see *Commonwealth* v. *Vitello*, 376
Mass. 426, 458-459 (1978), but only as evidence of a "fresh complaint."
The judge gave appropriate limiting instructions as to the effect of such
evidence. This evidence therefore was not before the jury for its truth as
to the question of identity.

[2] On direct examination:

"Q: Now, this individual that came into your room, could you de-
scribe him, please?
Mrs. Hilliard, do you know the individual who came into your room
that night?
A: He was tall, with black hair and mustache. That's all I can say.
Q: Did you know the individual that came into your home?
A: No.
Q: Did you tell the police that night who it was, Mrs. Hilliard?
A: I said it looked like Paul Bishop. I couldn't swear to it."

\*       \*       \*

"Q: Now, that individual you saw in your room that evening, did you
know that individual?
A: Did I speak to him?
Q: Did you know that individual?
A: Yes.
Q: And who did you know that individual to be?
A: I just said it.
Q: Would you please tell us who you know that individual to be that
was in your room, Ma'am?
A: Paul.
Q: Who do you mean by Paul?
A: As I say, it looked like Paul."

\*       \*       \*

"A: No. I don't remember much about what happened that night. I
remember I went to the hospital.
Q: Mrs. Hilliard, who came into your bedroom that night?
A: As I said, it looked like Paul.
Q: Paul whom, Ma'am?
A: Bishop.
Q: Like this individual over here (indicating)?
A. Yes. Looked like him."

\*       \*       \*

To withstand a motion for a directed verdict, the evidence, taken most favorably to the Commonwealth, must be sufficient for a rational trier of fact to find each essential element of the crime charged beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). If the evidence is sufficient to avoid a directed verdict, the jury decide the weight to be given it. *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts*, 393 U.S. 1058 (1969). The victim's identification testimony was varied. Asked if she knew who her assailant was, her responses ranged from the negative to twice asserting that she did, naming him as "Paul." On one of those two occasions she appears to have pointed to the defendant. On both occasions she added, "It looked like Paul," or, "It looked like him."

The defendant argues that the total effect of the victim's testimony is only that her attacker "looked like" or resembled the defendant. He concedes that questions of identity are ordinarily for the jury but contends that for a case to be submitted to a jury the witness must testify to more than a mere resemblance. *United States* v. *Luck*, 447 F.2d 1333, 1337 (6th Cir. 1971) (identification evidence held insufficient where four eye-witnesses testified that the defendant

---

"Q: Is that the individual that came into your bedroom that night, Mrs. Hilliard?
A: I said it looked like him; I couldn't swear to it."

\*    \*    \*

"Q: I see. And did you get a good look at this individual?
A: Not too good a look, no."

\*    \*    \*

"Q: And can you identify the individual that was in your bedroom that night?
A: Yes, sir.
Q: Who is that individual, Ma'am?
A: Paul.
Q: Would you point that individual out, please?
A: Over there (indicating).
Q: The individual seated right here?
A: It looked like him, yes, sir."

resembled one of the robbers). He argues that where the sole identifying witness is unsure and his testimony is not corroborated, the court must direct the verdict. *United States* v. *Johnson,* 427 F.2d 957, 961 (5th Cir. 1970) (After viewing defendant in a lineup and his picture in a photographic array, the witness could only say, "He looks more like the man who robbed me than any of the others." Held insufficient without corroborating evidence).

Although we accept the principles underlying the decisions in these and in other cases cited by the defendant, they are not helpful to him, as their facts differ materially from those in the case before us. Here the witness twice identified the defendant as her attacker, though in each instance the positive identification was followed with a statement that "it looked like" the defendant. That this evidence may have been "inconsistent and contradictory does not render [it] insufficient; all [the] statements are entitled to be considered as probative evidence." *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 410-411 (1978). Accord, *United States* v. *Williams,* 436 F.2d 1166, 1168 (9th Cir. 1970), cert. denied, 402 U.S. 912 (1971). The jury heard the testimony, observed the victim and could hear her and note the inflections of her voice. Their members were thus in a much better position than we are to determine what part of the victim's testimony was believable. It was for the jury to determine the credibility of her testimony. *Commonwealth* v. *Fitzgerald, supra* at 411. They could have found that the victim's reservations were "compatible with a candid and conscientious approach" toward her duty as a witness. *United States* v. *Williams,* 436 F. 2d at 1168. They were entitled to consider that some witnesses "verbalize their assurances of being correct with more positiveness than others," *United States* v. *Smith,* 563 F.2d 1361, 1363 (9th Cir. 1977), cert. denied, 434 U.S. 1021 (1978), and to have in mind that the victim was eighty-two years old, nervous, and uncomfortable in her role.[3] We also note in passing that when a victim of a

---

[3] The following colloquy occurred on a voir dire:

"THE COURT: Are you frightened here today?
THE WITNESS: What?

crime identifies a photograph as being that of an attacker, the witness is saying no more than that the visage portrayed "looks like" the criminal's, yet such identifications may be admitted at trial as substantive proof of identity. See, e.g., *Commonwealth* v. *Vitello*, 376 Mass. 426, 458 (1978).

Evidence was also admitted at trial that the defendant hid when the police came to arrest him and that he had asked those present at his arrest to "find out from Fred what's going on." The jury could have found the first circumstance to indicate a consciousness of guilt. As there was no evidence before the jury that the police told the defendant that he was being arrested for assaulting the victim, the jury could have found that his reference to the victim's son, Fred, indicated that the defendant was involved in the crimes charged.

The victim's statements at the hospital on the evening of the seventeenth as related by her son ("Well, she said, it looked like Paul. I'm almost sure it was Paul"); by her granddaughter ("She said that it did look like Paul Bishop," and that it was "Paul Bishop"); and by a police officer ("She said it was Paul Bishop, who she has known since he was a little boy") were admitted as fresh complaints over the defendant's general objection and exception. Before the testimony was given, the judge properly instructed the jury on the purpose of such evidence and the restrictions on its use. The fresh complaints presented nothing that had not already come in through the victim's testimony. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-397 (1976); *Commonwealth* v. *Lund*, 5 Mass. App. Ct. 884, 885 (1977). Moreover, the judge's jury charge contained clear instructions on fresh complaint which were, if anything, more favorable to the defendant than those to which he was entitled.[4] We have no doubt that the jury understood and followed them. There was no error.

---

THE COURT: Are you frightened of anybody here today?
THE WITNESS: No, but I don't like to keep talking about it. I don't like no trouble."

[4] The judge stated in part: "So whatever you find that Anna Hilliard said or didn't say to the police officers or members of her family comes in

After the police officer testified to the victim's complaint, he was asked if he saw Paul Bishop in the courtoom. He said that he did and pointed to him. The defendant's attorney did not object; the question called for nothing more than for the officer to identify the defendant as Paul Bishop.

*Judgment affirmed.*

---

only as corroborating evidence, but it is only useful to you if it is estab-
lished by evidence which was subject to cross-examination independently
that the act charged did occur and the defendant was in fact the perpe-.
trator. It can't be bootstrapped by the corroboration if it is missing in the
first place in Mrs. Hilliard's testimony. So you are going to have to ana-
lyze Mrs. Hilliard's testimony, and if that establishes in your mind beyond
a reasonable doubt all the elements of the crime charged, including iden-
tity, then and then only may you consider the corroborating evidence."