COMMONWEALTH vs. MARK ROSSI.

Worcester. April 13, 1984. — January 28, 1985.

Present: ARMSTRONG, ROSE, & WARNER, JJ.

*Evidence,* Prior conviction. *Practice, Criminal,* Assistance of counsel. *Error,* Harmless. *Assault with Intent to Rape. Assault and Battery by Means of a Dangerous Weapon. Words,* "Dangerous weapon."

At the trial of indictments arising from an attack by the defendant on a woman in her home, counsel's failure to object to the admission of three assault and battery convictions of the defendant on which no sentence had been imposed deprived the defendant of effective assistance of counsel and required a new trial, where the three convictions were of forcible acts against women, where the Commonwealth's case turned entirely on the victim's identification, for which there was no corroboration, and where the defendant produced evidence of a plausible and well-supported alibi. [258-260]

At the trial of indictments charging assault with intent to rape and breaking and entering with intent to commit a felony, there was sufficient evidence to warrant the jury's inference that the defendant had intended to rape the victim when he broke into her home and attacked her. [261]

At the trial of an indictment charging assault and battery by means of a dangerous weapon, it was open to the jury to find that a large ring worn by the defendant on his right hand when he beat the victim with his fists constituted a dangerous weapon within the meaning of G. L. c. 265, § 15A. [261]

INDICTMENTS found and returned in the Superior Court Department on June 15, 1982.

The cases were tried before *James P. Donohue,* J., and a motion for a new trial was heard by him.

*Barry P. Wilson* for the defendant.

*Claudia R. Sullivan,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant appeals from his convictions of assault with intent to rape, assault and battery by means of

a dangerous weapon, and breaking and entering with intent to commit a felony (rape). There was evidence to the effect that he had been identified from a photographic array by the victim as the person who, some time between three-thirty and four o'clock the morning of April 10, 1982, entered her home, awoke her, directed her to "[t]ake off your clothes, you whore," and, upon her refusal, beat her around the chest and face with his fists. The assailant's left hand had a ring, described as large, which may have been responsible for breaking one tooth, chipping another, and gashing her forehead. He abruptly stopped the attack, put on dark glasses and fled. The victim had not seen her assailant previously but later that day selected his photo from the array (which is before us), apparently without hesitation.

The defendant gave detailed, somewhat unusual, alibi testimony which was corroborated by three witnesses, and he introduced as well evidence that he had passed a lie detector test. Before the defendant testified, his counsel pressed a motion addressed to the judge's discretion under *Commonwealth v. Chase*, 372 Mass. 736, 750 (1977), to preclude the prosecution from impeaching the defendant through the introduction of his prior convictions of assault and battery and breaking and entering with intent to commit a felony (larceny). The judge denied the motion. Faced with the denial, defense counsel followed the not uncommon practice[1] of exposing the prior convictions on direct examination to blunt the force of the anticipated impeachment. On cross-examination the prosecutor elicited (without objection) the names of the victims in the three assault and battery convictions, which made it apparent to the jury that the victims were in each case women.

At no time was it brought to the judge's attention that the three assault and battery convictions were not admissible for impeachment purposes under the terms of G. L. c. 233, § 21. In none had a sentence been imposed. One had been placed on file; on the others the defendant had been placed on proba-

---

[1] See *Commonwealth* v. *Cadwell*, 374 Mass. 308, 311-312 (1978); *Commonwealth* v. *Coviello*, 7 Mass. App. Ct. 21, 22-25, *S.C.*, 378 Mass. 530, 533-534 (1979).

tion. Unlike a felony, as to which by the express terms of § 21, a plea, verdict, or finding of guilt suffices for admissibility regardless whether sentence is imposed, a misdemeanor is inadmissible unless a sentence has been imposed. See *Forcier* v. *Hopkins,* 329 Mass. 668, 670-671 (1953); *Commonwealth* v. *Devlin,* 365 Mass. 149, 163 (1974); Liacos, Massachusetts Evidence 152-153 (5th ed. 1981). Probation is not a sentence within the meaning of that rule. *Fay* v. *Harlan,* 128 Mass. 244, 245 (1880). *Commonwealth* v. *Sacco,* 255 Mass. 369, 427 (1926). *Commonwealth* v. *Hersey,* 324 Mass. 196, 205 (1949). *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 571 (1982). Thus the defendant was entitled as of right, had he raised the point, to have the three convictions of assault and battery against women not divulged to the jury.

The defendant argues on appeal that his conviction should be reversed for ineffective assistance of counsel. Other than permitting the three assault and battery convictions to go to the jury, trial counsel handled the defense with a high degree of professional competence.[2] Still, the admission of the convictions cannot reasonably be thought to be other than a lapse by defense counsel. The Commonwealth's case turned entirely on identification evidence, the potential for unreliability of which is well recognized;[3] there was no (or virtually no[4]) cor-

---

[2] The defendant suggests that his trial counsel displayed ineffectiveness in failing to obtain a blood test of stains on the victim's sweatshirt. The prosecutor argued to the jury that the stains were probably caused by the defendant's bleeding (see note 4, *infra*); but a test conducted after trial, in connection with the defendant's motion for a new trial, disclosed that the stains were not of the defendant's blood but could have been of the victim's blood. The judge properly concluded that the point was not of such probative significance as to warrant a new trial; and defense counsel may have been reluctant before trial to obtain a test, the results of which (if adverse) could tend to incriminate the defendant even if he had been wrongly identified as the intruder.

[3] *Simmons* v. *United States,* 390 U.S. 377, 383 (1968). *Manson* v. *Brathwaite,* 432 U.S. 98, 111-112 (1977).

[4] The victim had stated to the police that, in the course of fighting off her attacker, she had scratched the left side of his face. When arrested later the day of the crime, the defendant had a not particularly remarkable cut on the center of his lower lip. (The cut appears in a photograph in evi-

roboration. The defendant's alibi was plausible and well supported. He had submitted to, and passed, the lie detector test. But for learning of the three prior convictions of forcible acts against women, the jury could well have reached the conclusion that the victim's identification was mistaken. For the unusual dangers of prejudice inherent in the admission of prior convictions of crimes similar in nature to those charged, see *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 680-681 (1974) (Hennessey, J., concurring); *Walter* v. *Bonito,* 367 Mass. 117, 123-124 (1975); *Commonwealth* v. *Chase, supra* at 750. Contrast *Commonwealth* v. *Maguire,* 392 Mass. 466, 471 (1984). Defense counsel's tactical response to the judge's denial of the *Chase* motion was reasonable: he tried to minimize the impact of the prior convictions by adducing them on direct examination, and he tried to squeeze some advantage from them by arguing to the jury that the guilty pleas in those cases demonstrated the defendant's basic honesty. Thus he tried to make a virtue of necessity; but he had erred in concluding that the necessity existed.

Despite the over-all quality of the defense, a mistake as serious in its likely effect as this amounts to ineffective assistance of counsel, whether it is regarded as simple oversight or as a tactical judgment that was "manifestly unreasonable." *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). In either event, it is clear that, but for the error, there is a "reasonable probability that . . . the factfinder would have had a reasonable doubt respecting guilt." *Strickland* v. *Washington,* 466 U.S. 668, 695 (1984).[5] It follows that the convictions cannot stand.

---

dence.) The hospital report shows that the victim told hospital personnel that her attacker cut his hand and was bleeding when he left, leaving a trail of blood. When the defendant was arrested, his hands were not cut, although an officer testified that the knuckles appeared to have been bruised. The net corroborative value of this testimony could variously be regarded as slight, nonexistent, or even negative. The defendant wore a large ring on his left hand, but so do many men. The ring was not tested for traces of the victim's skin, blood, or hair.

[5] The Commonwealth concedes that the assault and battery convictions were inadmissible but argues that no harm was done. The first reason ad-

The defendant's other contentions are unavailing. The reliability of the identification was a question of fact for the jury. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 410-411 (1978). *Commonwealth* v. *Bishop,* 9 Mass. App. Ct. 468, 472 (1980). The jury could properly have inferred an intent to commit rape from the intruder's demand that the victim remove her clothes, his use of the words "you whore," evidence that the beating was apparently in response to the victim's refusal to comply with the order, and the absence of evidence of other apparent motive, such as larceny. Compare the facts in *Commonwealth* v. *Freeman,* 352 Mass. 556, 557-559, 561 (1967), in *Commonwealth* v. *Bishop, supra* at 469, and *Commonwealth* v. *White,* 11 Mass. App. Ct. 929, 930 (1981). While it is true that an unadorned hand has been held not to constitute a dangerous weapon as that term is used in G. L. c. 265, § 15A, *Commonwealth* v. *Davis,* 10 Mass. App. Ct. 190, 193, 198 (1980), nevertheless we cannot say as matter of law that a large ring worn on a hand might not be found by the finder of fact to be a dangerous weapon from the manner in which it is used. See *Commonwealth* v. *Appleby,* 380 Mass. 296, 304 (1980); *Commonwealth* v. *Marrero, post* 921, 922 (1984).

The judgments are reversed, the verdicts are set aside, and the cases are remanded for further proceedings consistent herewith.

*So ordered.*

vanced is that the prior burglary conviction, which was admissible, was more serious, being a felony, than the three misdemeanor convictions. That type of argument is often sound, see *Gilday* v. *Commonwealth,* 355 Mass. 799 (1969); *Commonwealth* v. *Boudreau,* 362 Mass. 378, 382 (1972); *Commonwealth* v. *Brown,* 2 Mass. App. Ct. 76, 83 (1974), but it cannot reasonably be applied here, where the three misdemeanor convictions and the crimes being tried all involve forcible acts against women. Compare *Commonwealth* v. *Barrett,* 1 Mass. App. Ct. 332, 336-337 (1973); *Commonwealth* v. *Barrett,* 3 Mass. App. Ct. 8, 8-9, 16-18 (1975). Alternatively, the Commonwealth contends that the information could have been adduced from the officer who administered the lie detector test. We are not aware of cases on point; but we think it extremely unlikely that any trial judge would permit cross-examination of a lie detector expert to be made the vehicle for divulging a defendant's prior criminal record to the jury, at least in the absence of a strong showing that it would otherwise be impossible for the jury to evaluate the reliability of the test results.