COMMONWEALTH vs. STEVEN M. BAKER. June 12, 1985. *Identification. Evidence*, Cross-examination, State of mind. *Practice, Criminal*, Argument by prosecutor.

At about 6:00 P.M. on December 30, 1982, two men approached the victim and her husband as they walked from their jewelry store on Main Street in Springfield toward their car. As the men passed, one of them snatched the victim's pocketbook. Main Street was well-lighted, and the victim observed the principal perpetrator for approximately two minutes. A passer-by, one Betty Seymour, heard the commotion and saw a man carrying a pocketbook run past her. Seymour joined the victim's husband in pursuing the man through well-lighted streets; at one point Seymour was able to grab hold of the man's jacket. Seymour followed the man into the well-lighted foyer of an apartment building. From that vantage point she observed him walk down a hallway and turn and face her. Seymour saw the man's face for from twenty seconds to one minute.

Later that night both the victim and Seymour identified the defendant as the pocketbook snatcher from a nine-picture photographic array. Both identified the defendant at trial.

The defendant appeals from his conviction of unarmed robbery, alleging error in the admission of evidence of the failure of the victim and Seymour to identify the defendant's brother as the perpetrator of the crime and alleging prosecutorial misconduct.

1. *The evidentiary question.* The defendant attempted to show that his brother, Eric Baker, committed the crime with one Jesse Dennard.[1] Dennard testified and admitted his participation, saying that indeed it was Eric who snatched the pocketbook. A signed statement by Eric was admitted in evidence; Eric admitted participation — but it was Dennard who took the pocketbook.

---

[1] On the first day of trial Dennard pleaded guilty.

On cross-examination of an investigating police officer, Raymond Muise, the defendant sought to establish that Muise and other police officers had failed to investigate the possibility that it was Eric and not the defendant who participated in the robbery. This failure, the defendant attempted to suggest, was in the face of information given to Muise by Dennard which clearly implicated Eric.[2] To this end Muise was asked whether the array from which the victim and Seymour selected the defendant's photograph included a picture of Eric. No, Muise said, but Eric's picture had been in an array shown to the victim and Seymour some nine months after the robbery. Cross-examination of Muise ended abruptly.

On redirect examination, Muise was permitted to testify, over general objection, that both the victim and Seymour "passed right by" Eric's photograph in the second array. The defendant did not request a limiting instruction. On appeal the defendant argues that this testimony constituted inadmissible hearsay.

The rule is well-settled that a general objection will not prevail if the evidence offered is admissible for any purpose and that if no limiting instruction is sought such evidence is competent for all purposes. See *Solomon* v. *Dabrowski*, 295 Mass. 358, 359 (1936); *Salonen* v. *Paanenen*, 320 Mass. 568, 575 (1947); *Thompson* v. *Beliauskas*, 341 Mass. 95, 97 (1960); *Commonwealth* v. *Pinnick*, 354 Mass. 13, 16-17 (1968); *Commonwealth* v. *Carroll*, 360 Mass. 580, 588 (1971); Liacos, Massachusetts Evidence 74 (5th ed. 1981). Here the defendant sought to undermine the Commonwealth's case — and at least create reasonable doubt in the minds of the jurors — by exploring the state of mind of the investigating police officer. The thrust of the defendant's cross-examination of Muise was that, despite the strong suggestion that the defendant's brother Eric was the culprit, Muise did nothing to investigate that possibility. The evidence of nonidentification of Eric was relevant to that issue. "[A]s a general rule witnesses should have the opportunity to explain on redirect why they did or did not do certain things which were the subject of questioning on cross-examination." *Commonwealth* v. *Dougan*, 377 Mass. 303, 309 (1979). See *Commonwealth* v. *Errington*, 390 Mass. 875, 880 (1984). The evidence was admissible not to prove the truth of the assertions of the victim and Seymour

---

[2] In his closing, defense counsel argued that the police, having arrested the defendant, simply did not care about apprehending the real culprit: "I suggest to you that you can think about why Eric Baker refused to answer any questions and whether or not there is any evidence that the police arrested Eric Baker. I would suggest to you that the reason they didn't is because they thought we've got somebody right here, we've got enough, and that's all we need. Was there any indication from the officer that he went to talk to Eric Baker after Jesse Dennard told him that Baker was involved with him?"

but to establish Muise's state of mind. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 7-8 (1976).[3] There was no error.

2. *Prosecutorial misconduct*. During closing argument, the prosecutor stated:

> "Eric Baker has given a statement, the statement is in evidence, and you will be able to read it in the jury room. And where was the statement taken? It was taken at the jail nine months after the robbery. And where is Eric Baker residing now? *He is in prison. It is not going to make any difference to him.* Who is the only person that has got a stake in this? Who are they trying to protect? *Isn't Eric Baker coming in here and trying to take the heat off his brother through the use of this statement?"* (Emphasis supplied.)

The defendant specifically objected to the statement that Eric Baker was "trying to take the heat off" the defendant.[4] On the judge's instruction, the prosecutor then said to the jury:

> "I have to apologize. Eric Baker did not come in here and attempt to take the heat off his brother, he came in here and he refused to testify other than the fact that his name was Eric Baker and he is now in prison. He testified that he was residing at MCI, which is Massachusetts Correctional Institution, at Gardner. There is also a statement from Eric Baker which is in evidence, and I suggest to you if you consider his testimony and the statement, you are free to draw an inference, and that inference would be that Eric Baker was trying to protect his brother Steven."

The defendant's general objection was overruled. We conclude that whatever misimpression may have been conveyed by the objected-

---

[3] The hearsay rule bars the admission in evidence of extrajudicial statements offered to prove the truth of the matter asserted therein. Proposed Mass.R.Evid. 801(c) & 802. Fed.R.Evid. 801(c) & 802. Both Proposed Mass.R.Evid. 801(a) and Fed.R.Evid. 801(a) define a "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." Under some circumstances, a failure to act, or silence, may be as probative as a statement. See Liacos, Massachusetts Evidence 265 (5th ed. 1981); Hughes, Evidence § 456 (1961). In this case when Muise showed the eyewitnesses a photographic array of suspects for identification purposes, the failure to identify Eric Baker was an assertion that Eric Baker was not one of the culprits. Thus, if offered only for the purpose of establishing that Eric Baker was not the second man, Muise's testimony about the eyewitnesses' silence regarding Eric Baker's photograph would have been barred on proper objection by the hearsay rule, as the identification witnesses had not testified regarding the second array. See *Commonwealth* v. *Daye*, 393 Mass. 55, 57-60 (1984).

[4] At trial, Eric testified that he resided at a Massachusetts Correctional Institution and then invoked his Fifth Amendment privilege not to testify.

to portion of the argument (we note, however, that the reference to "taking the heat off" related to the incriminating written statement of Eric and not to his testimony) was adequately cured by the prosecutor's apology.

Of concern, however, is the defendant's allegation of misconduct in the prosecutor's assertion, unfounded in the evidence, that Eric's acknowledgment of participation in the robbery made "no difference" to him because he was already in prison. The suggestion that Eric faced no additional jeopardy if convicted of the unarmed robbery impaired the defense unfairly casting crucial defense evidence in doubt. See *Commonwealth* v. *Clary*, 388 Mass. 583, 591 (1983).

The defendant did not object to this portion of the argument nor request a curative instruction. Thus, our review is limited to a determination of whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 271 (1982). *Commonwealth* v. *Gaeten*, 15 Mass. App. Ct. 524, 526 (1983). "In analyzing whether an improper remark is prejudicial or presents a risk of a miscarriage of justice, the remark must be considered in the context of the prosecutor's entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Fitzgerald, supra,* and cases cited.

The Commonwealth's case rested entirely on identification evidence, the potential for the unreliability of which is well-recognized. *Commonwealth* v. *Rossi*, 19 Mass. App. Ct. 257, 259 (1985). In this case, however, the victim's identification of the defendant was corroborated by another eyewitness, who had more than an adequate opportunity to observe the defendant. Contrast *Commonwealth* v. *Rossi, supra* at 259-260. Both identifications were made on the night of the robbery, and there was no allegation or indication of suggestiveness in the identification procedure. Nor were the identification witnesses subject to impeachment which might cast their identifications in doubt. Contrast *Commonwealth* v. *Clary, supra* at 591. The defense was weak; the respective accounts of the robbery by Dennard and Eric Baker were marked with significant discrepancies, particularly as to what had happened immediately after the robbery.[5] The content of the prosecutor's "apology" may well have taken the sting out of the offensive remark. This second argument repeated the substance of the first without any suggestion that Eric had nothing to lose by acknowledging a role in the robbery. The argument as a whole was fair, focusing on the differences in the description of events in the testimony of Dennard and the written state-

---

[5] Eric Baker's statement recited that after the proceeds of the robbery had been divided, he and Dennard parted company. Dennard, on the other hand, rendered a detailed account of his activities with Eric after the robbery. Furthermore, on cross-examination, when asked whose apartment he had gone to immediately after the robbery, Dennard testified, in an apparent slip, "Steven [the defendant] said it was his" and then added, "Eric said it was his I mean." Moreover, each accused the other of being the pocketbook snatcher.

ment of Eric. Immediately after the prosecutor's argument, the judge force-fully instructed the jury that arguments of counsel were not evidence and that the jury were not to base their findings on what counsel said in argument. After review of the entire record, we conclude that there is not a susbstantial risk of a miscarriage of justice.

*Judgment affirmed.*

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Common-wealth.