Agnes, Peter W., J.
INTRODUCTION
This is a criminal action in which the Commonwealth has filed a motion in limine whereby it seeks a ruling in advance of trial that certain extrajudicial statements made by unknown declarants are admissible in evidence. For purposes of the Commonwealth’s motion, the essential facts are not in dispute
BACKGROUND
The defendant was arrested on January 16, 2004 with another individual, Mr. Johnson, while the two were inside the defendant’s Honda automobile. The police had the defendant’s vehicle under surveillance. The police observed it travel from 29 West Street in Worcester to a parking lot on Route 20 where it pulled in next to a blue pick-up truck driven by Mr. Johnson. Both vehicles left together with the Johnson vehicle following the Honda driven by the defendant. The police observed the two vehicles pull into the driveway of a trailer park on Route 20. Mr. Johnson exited his truck and entered the Honda vehicle. The Honda drove off and was stopped by the police while traveling on Route 20.
*320 According to the police, the defendant was moving side to side in the front seat as the Honda slowed down. Shortly thereafter, as the Honda came to a stop, Mr. Johnson was observed to throw several plastic bags through the passenger side window and to the ground. A search of those bags revealed the presence of 135 individual packets of a substance that proved to be heroin, a Class A controlled substance and nine other baggies containing approximately 54 grams of a white powder that proved to be cocaine. The police formed the opinion, which was reasonable under the facts assumed to exist for purposes of this motion, that they had observed a drug transaction in which the defendant was attempting to sell heroin and cocaine to Mr. Johnson.
Following his arrest, the police seized $715 and two cell phones from defendant Vasquez, aT-Mobile phone and a Sony phone, and brought both phones back to the vice squad office. Officer James O’Rourke answered the Sony phone at approximately 11:20 a.m. and the following conversation took place:
An unknown male voice: “Dave, this is Adam, where are you man?”
O’Rourke: “I got busy, I’m about half an hour behind.”
Adam: “Okay, I’ll be looking out the window for you.”
O’Rourke: “Okay, what was it that you needed again?”
Adam: “One Bundle.”
At approximately 11:45 a.m., O’Rourke answered the T-Mobile phone and the following conversation took place:
An unknown male voice: “Dave, it’s me Tom, can I meet you?”
O’Rourke: “Okay, where do you want to meet me?”
Tom: “I’ll see you at the same spot.”
O’Rourke: “All right, what do you want?”
Tom: “Is this you Dave?”
O’Rourke: “Yup.”
Tom: “Okay, I’m not sure how much I want, I will tell you when I meet you.”
The T-Mobile phone rang several more times and the callers asked for Dave, but then stated that the officer answering the phone was not Dave and hung up. The phones were then shut off. In the opinion of the police officers, based on their training and experience in the investigation of street sales of narcotics, these conversations related to the sale of narcotic drugs.
DISCUSSION
I
A
The Commonwealth argues that Officer O’Rourke should be allowed to testify to the contents of the phone calls he had with unknown callers while answering the defendant’s cell phones because the statements would not be offered to prove the truth of the matters contained in them (that the unknown callers were actually placing orders for drugs), and thus are not excluded by the rule against hearsay. See Commonwealth v. DelValle, 351 Mass. 489, 491 (1966) (“The broad rule on hearsay evidence interdicts the admission of a statement made out of court which is offered to prove the truth of what it asserted”). See also Proposed Mass.R.Evid. 801(c) (“ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted”); Proposed Mass.R.Evid. 801(a) (“A ‘statement’ is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion”). However, the Commonwealth concedes that in order for the evidence to have probative value, it must be believed, i.e., the jury would have to believe that the calls were from customers trying to arrange the purchase of drugs in order to infer that the phone called was being used to facilitate drug sales. Commonwealth’s Memorandum of Law at 3-4. One of the leading Massachusetts treatises on the subject acknowledges this characteristic of the evidence as well. See M. Avery, M. Brodin and P.J. Liacos, Massachusetts Evidence §8.2.3 at 472 (7th ed. 1999) (hereafter, “Massachusetts Evidence”). Moreover, the Commonwealth further concedes that the evidence would be offered to prove circumstantially that the defendant is a drug dealer.
The Commonwealth relies principally on Commonwealth v. Washington, 39 Mass.App.Ct. 195, 199 (1995), in which the Appeals Court held that in a prosecution of the defendant for drug offenses, the police could testify that following the arrest, a pager seized from the defendant at the time of his arrest “beeped” and when the telephone number appearing on the display was called back by the police unknown persons asked for “Gino” and ordered a quantity of drugs. In Washington, the court relied on a line of cases such as Commonwealth v. Massod, 350 Mass. 745 (1966) (contents of telephone calls received by the police at a location where the defendant was arrested for gaming violations in which unknown persons placed bets were admissible to establish the nature of the location), and Commonwealth v. Kimball, 7 Gray 328 (1856) (conversations among occupants of a house admissible to prove its character as a House of 111 Fame), and held that such evidence is not hearsay because it is admitted for a limited purpose, namely, to prove the character or nature of a thing or object. Washington, supra, quoting Massachusetts Evidence, supra at 472 (explaining that the concerns associated with the rule against hearsay are diminished because there is an absence of a motive to falsify on the part of the out-of-court declarant and there is the added assurance of trustworthiness based on the fact that a *321 volume of items of independent evidence are consistent with each other).
While the decision by the Appeals Court in the Washington case represents the settled law of the Commonwealth, see, e.g., Hughes On Evidence §456 (Boston Law Books 1961) (formerly vol. 19 of Mass Practice Series),[1] questions remain about the doctrinal framework under which such evidence is excluded from the definition of hearsay in Massachusetts. This question goes to the heart of a lively and longstanding debate about the meaning of the rule against hearsay.
B
This case involves a facet of the classic hearsay puzzle presented by implied assertions. At one end of the spectrum, representing the broadest understanding of the doctrine that implied assertions are within the scope of the rule against hearsay, is the famous dictum issued by Baron Parke in Wright v. Tatham, 112 Eng.Rep. 488 (Exch. Ch. 1837), affirmed, 47 Rev.Rep. 136 (House of Lords 1838). The case was a contest between the decedent’s steward and devisee, one Wright, and Admiral Tatham, the decedent’s cousin and heir at law. The outcome turned on whether the decedent was competent to make a will in 1822 and a codicil in 1825. Admiral Tatham offered evidence that over the years others had treated and described the decedent as feeble-minded. Wright, on the other hand, offered in evidence three letters to the decedent from three separate and deceased writers, written between 1784 and 1799, which described events in such a way that the writers must have believed he was competent in order to demonstrate that for that reason the finder of fact should infer that he was competent. See generally John M. Maguire, The Hearsay Thicket: Around and Through the Thicket, 14 Vanderbilt L.Rev. 741 (1961).
In Wright, Baron Parke ruled that the letters offered by Wright were “implied assertions” of the decedent’s competency, and, therefore, inadmissible as hearsay. Baron Parke formulated his holding, however, in terms that were broader than necessary to decide the case. He declared that “proof of a particular fact, which is not of itself a matter in issue, but which is relevant only as implying a statement or opinion of a third person on the matter in issue, is inadmissible in all cases where such a statement or opinion not on oath would be of itself inadmissible . . .”[2] This definition would effectively exclude all out-of-court verbal statements like those involved in the present case. As the Court of Appeals of Maryland recently observed:
In its original Wright v. Tatham form, the doctrine did not inquire into the declarant’s intent — beliefs communicated accidently by implication are as much “implied assertions” as beliefs expressed purposefully in an indirect manner. As evidenced by the “sea captain” hypothetical, the doctrine also did not distinguish between words and verbal conduct.
Stoddard v. Maryland, 2005 WL 3309783 (2005), reversing 157 Md.App. 247, 850 A.2d 406 (2004).
At the other end of the spectrum is the view expressed in Federal Rules of Evidence 801(a) and its Advisoiy Committee Note. Fed.R.Evid. 801(c) defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(a), in turn, defines “statement” as (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."[3] The omission of an express “intent” requirement in clause (1) of the definition of “statement” is addressed and clarified in the Advisoiy Committee note which provides that “nothing is an assertion unless intended to be one.” Fed.R.Evid. 801, Advisoiy Committee Note, 56 F.R.D. 183, 293 (1972). In particular, the Advisoiy Committee note states,
[njonverbal conduct.. . may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition may be inferred. This sequence is, arguably, in effect an assertion of the existence of the condition and hence properly includable within the hearsay concept. Admittedly, evidence of this character is untested with respect to the perception, memory, and narration (or their equivalents) of the actor, but the Advisoiy Committee is of the view that these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds. No class of evidence is free of the possibility of fabrication, but the likelihood is less with nonverbal than with assertive verbal conduct. The situations giving rise to the nonverbal conduct are such as virtually to eliminate questions of sincerity. Motivation, the nature of the conduct, and the presence or absence of reliance will bear heavily upon the weight to be given the evidence. Similar considerations govern nonassertive verbal conduct and verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted, also excluded from the definition of hearsay by the language of subdivision (c).

Id.

C

In Stoddard v. Maryland, supra, the Maryland Court of Appeals considered an appeal from the defendant’s conviction of second-degree murder of a three-year-old child. The defendant was the live-in boyfriend of the victim’s mother and the regular caretaker of the victim. The autopsy report indicated numerous physical injuries to various parts of the victim’s body. On the day of his death, the victim’s aunt dropped off her 18-month-old daughter who also was to be watched by the defendant while he cared for the victim and his younger brother. The aunt testified that she noticed numerous behavioral changes in her *322 daughter immediately following her stay with the defendant. When asked if her daughter had ever asked her anything about the case, the aunt was allowed to testify, over objection, that her daughter asked her if the defendant was going to “get her.” The trial court’s conclusion was that the child had not made any assertion, and, thus, her utterance was not an “out of court statement” and not hearsay. However, in his closing argument, the prosecutor described the little girl as an “eyewitness” to the crime and suggested her question to her mother (“Is Erik [the defendant] going to get me?”) was tantamount to an assertion that she was afraid of Erik because she saw what he did to the victim.
The intermediate Special Court of Appeals of Maryland, which engaged in a searching analysis of the hearsay doctrine of implied assertions, concluded that the little girl’s out-of-court utterance was not hearsay because it was not an assertion of any fact.
Applying the analytic tools developed to measure conduct and utterances against the new rules, it is, as hearsay, twice bereft. A little girl’s fearful question to her mother was not intended by her to be a communicative assertion of any fact. It was, pure and simple, a frightened request for information. “Am I safe?” It was not assertive. For that reason alone, it was not hearsay.
Even if the utterance could, arguendo, be deemed to be assertive, it still, moreover, was not offered as direct evidence of the ultimate issue. The arguably implicit assertion was not “I saw Erik [the defendant] attack Calen [the victim].” It was, at most, “I am afraid of Erik.” That is not the proposition to be proved. The possibly implicit fear of Erik was only a circumstantial predicate for a more attenuated inference one or two steps farther down the inferential line. For this second reason, alone, the utterance in question was not inadmissible.
Stoddard v. Maryland, 157 Md.App. at 279, 850 A.2d at 424. However, on further review, the seven justices of the Court of Appeals disagreed and reversed the conviction.
Contrary to the State’s contention, the words are not relevant if offered merely to prove that Jasmine was afraid of Stoddard. Jasmine’s fear of Stoddard is irrelevant unless it stems from a belief that she had seen Stoddard assault Calen. Although it is conceivable that Jasmine’s fear, taken together with her presence during the relevant time frame, was circumstantial evidence that Jasmine witnessed Stoddard assault Calen, this conceptualization is a distinction without a difference. Jasmine’s fear of Stoddard is relevant only if it is rational, i.e., only if it stems from a real-world condition or event. To rationally fear Erik Stoddard is to believe the proposition “I have a reason to fear Erik Stoddard.” Jasmine’s belief in this proposition is relevant only if the “reason” at issue is her having witnessed Erik assaulting Calen. Thus, in offering Jasmine’s fear as evidence, the State implicitly would be offering Jasmine’s belief in the proposition “I have a reason to fear Erik Stoddard and that reason is that I saw him assault Calen.”
Stoddard v. State, supra, 2005 WL 3309783 (2005). The majority opinion in Stoddard, which is authored by Justice Raker, like the opinion authored by Judge Moylan for the Court of Special Appeals, reaches beyond the specific facts to consider the broader question of whether implied assertions are within the rule against hearsay. Although Maryland has adopted rules of evidence patterned on the federal rules and Maryland’s Rule 5-801 (a) and 5-801(c) are identical to Fed.R.Evid. 801(a) and 801(c), the majority in Stoddard concluded that Maryland did not adopt the position of the federal Advisory Committee with respect to so-called verbal acts.[4] Instead, the majority opinion seems to reaffirm the broad common-law recognition of implied assertions as hearsay, as prescribed by Baron Parke’s opinion in Wright v. Tatham, supra, whether they are nonverbal acts or verbal utterances, and without regard to the intent of the declarant.
In any case, the majority opinion takes the position that in determining whether an out-of-court utterance is hearsay, the inquiry should not be into whether the declarant intended to assert the proposition which the fact-finder at trial is asked to infer, i.e., the implied assertion, but simply whether the declarant communicated a factual proposition whether express or implied. If the answer is “yes,” the majority opinion takes the position that the out-of-court utterance or conduct is hearsay.
We conclude that, with respect to the four testimonial inferences, out-of-court words offered for the truth of unintentional implications are not different substantially from out-of-court words offered for the truth of intentional communications. The declarant’s lack of intent to communicate the implied proposition does not increase the reliability of the declarant’s words in a degree sufficient to justify exemption from the hearsay rule. Said another way, we conclude that a declarant’s lack of intent to communicate a belief in the truth of a particular proposition is irrelevant to the determination of whether the words are hearsay when offered to prove the truth of that proposition.
We hold that where the probative value of words, as offered, depends on the declarant having communicated a factual proposition, the words constitute an assertion of that proposition. The declarant’s intent vel non to communicate the proposition is irrelevant. If the words are uttered out of court, then offered in court to prove the truth of the proposition — Le. of the matter asserted — they are hearsay under our rules.
Stoddard, supra, 2005 WL 3309783. Under this view, the out-of-court utterances involved in the present *323 case should be regarded as “statements” because they represent an implied assertion that the defendant sold drugs in the past, or is involved in selling drugs.[5]
The view of the majority in Stoddard, supra, that virtually all forms of implied assertions — both out-of-court verbal utterances and conduct — are included within the definition of hearsay is the position taken by the Iowa Supreme Court in State v. Dullard, 668 N.W.2d 585 (Iowa 2003). In Dullard, Des Moines police officers obtained permission to search the home where the defendant, Brett Dullard, lived with his mother in response to a report about a methamphetamine lab. The police found numerous precursor substances and paraphernalia that could be used for making methamphetamine in the garage. The police also found a handwritten note from an unidentified person in a spiral bound notebook that read as follows: “B— I had to go inside to pee + calm my nerves somewhat down. When I came out to go get Brian I looked over to the street North of here + there sat a black + white w/the dud out of his car facing our own direction — no one else was with him.”
At Brett’s trial, the handwritten note was introduced against him, over objection, not to prove the truth of the matters asserted, but rather to connect the defendant to the items in the garage. On appeal, the Supreme Court of Iowa reversed and ordered a new trial. After reviewing the authorities and the extensive literature on the subject of implied assertions, including a consideration of the Federal Rules of Evidence and the Advisory Committee notes, as did the two appellate courts in the Stoddard decisions, the Iowa Supreme Court reached essentially the same conclusion as the Court of Appeals of Maryland that the common-law doctrine exemplified by Wright v. Tatham under which out-of-court statements offered as implied assertions are hearsay remains valid.
The consequence of the [Federal Advisory] committee’s approach is to admit into evidence a declarant’s belief in the existence of a fact the evidence is offered to prove, without cross-examination, just as if the declarant had explicitly stated the belief. Yet, if the declarant of the written note in this case had intended to declare his or her belief that Dullard had knowledge and possession of drug lab materials, the note would unquestionably constitute hearsay. Implied assertions from speech intended as communication clearly come within the definition of a statement under rule 5.801( )(I). Unlike the committee, however, we do not believe indirect or unintentional assertions in speech are reliable enough to avoid the hearsay rule. We think the best approach is to evaluate the relevant assertion in the context of the purpose for which the evidence is offered. We recognize this approach will have a tendency to make most implied assertions hearsay. However, we view this in a favorable manner because it means the evidence will be judged for its admission at trial based on accepted exceptions or exclusions to the hearsay rule. It also establishes a better, more straightforward rule for litigants and trial courts to understand and apply . . . Clearly, there is no explicit language in our definition of hearsay under rule 5.801() and (c), as with the federal rule, that categorizes implied assertions from oral or written words as nonhearsay. The rule only expressly excludes unintended conduct. The characterization arrived at by the committee is achieved by analogy to nonverbal conduct. Yet, the specific exclusion under the rule of nonverbal conduct as nonhearsay, in the absence of the specific exclusion of nonassertive verbal conduct or assertive verbal conduct offered to infer something other than the matter asserted from the definition of a statement, tends to indicate that the legislature may not have intended to exclude such implied assertions from the hearsay rule. Thus, the rule should be read to incorporate our common law approach.
Dullard, supra, 668 N.W.2d at 595. Accord, Bernadyn v. Maryland, 2005 WL 3309787 (Ct.App.Md. 2005) (a medical bill addressed to the defendant and seized from a particular location that matched the address on the bill was hearsay when offered to establish that the defendant lived at that address). Compare, Commonwealth v. Ortega, 441 Mass. 170, 172 (2004) (Commonwealth permitted to prove defendant’s constructive possession of drugs in the apartment that was searched based on evidence that during the course of the search, the police found men’s clothing and shoes in the bedroom closet, bottles of aftershave lotion in the bedroom, an envelope addressed to the defendant at the Acushnet Avenue address, other mail forwarded to him there, and bank statements in the defendant’s name with a different address).
D
The Stoddard case includes a concurring opinion by Justice Wilner which takes issue with the broad reading of the doctrine of implied assertions contained in the majority opinion. Justice Wilner’s opinion is noteworthy for its contribution to an understanding of why not all implied assertions should be regarded as within the scope of the modern rule against hearsay. Justice Wilner and the two justices who joined his concurring opinion specifically agree with Justice Raker’s conclusion that the child’s statement to her mother was hearsay “because (1) whether Jasmine actually intended to assert that she had observed Stoddard assault Calen, the relevance of her question depended entirely on the jury’s assuming that she did, indeed, intend by it such an assertion, and (2) that necessarily assumed assertion was offered for its truth.” Stoddard, supra, 2005 WL 3309783 (Wilner, J., concurring).[6] However, the concurring opinion parts company with the majority over the continued vitality *324 of the common-law doctrine under which most if not all implied assertions are hearsay.
(1)
Justice Wilner’s opinion begins with a penetrating analysis of the many cases and judicial opinions that make up the dispute that has come to be known as Wright v. Tatham. Contrary to the manner in which that case is usually presented, Justice Wilner explains that there is reason to question the motives of the party who is so often depicted as the victim of inadmissible hearsay as well as the significance of the decision by Baron Parke that so often is described as the embodiment of the common law on the evidentiary status of implied assertions.
It turns out, as Justice Wilner explains, that the dispute arose when, only hours after the death of John Marsden, his cousin, Rear Admiral Standford Tatham, filed a caveat to the probate of his will and codicil based on a claim that Marsden was not competent at the time it was made and that he had been unduly influenced by his steward, George Wright, who stood to inherit most of the estate. The matter of Marsden’s competency was tried to a jury in 1830 and Tatham suffered an unqualified defeat.
Ninety six witnesses testified — 35 for Wright and 61 for Marsden and a great deal of correspondence to and from Marsden was admitted bearing on his competence. The jury found the Will and Codicil to be valid. The presiding judge declared himself satisfied with the verdict, and a motion for a new trial was denied by the Master of the Rolls. Tatham presented his motion then to Lord Chancellor Brougham who, having acted as counsel forTatham in the matter, requested the assistance of Lord Chief Justice of the Common Pleas Tindal and the Lord Chief Baron, both of whom opined that the motion should be denied.[7]
One of the issues raised by Tatham concerned the correspondence. Chief Justice Tindal noted that “(t]he importance of this long and varied correspondence in deciding on the competence of the testator to make his will is self-evident,” and that if it was the genuine correspondence of Marsden, “no one could hesitate to declare that the man who possessed sufficient vigour and energy of mind to carry on this correspondence must be held to possess a disposing power over his own property. Id. at 23. Tatham contended that the letters in question were actually written by Wright or someone under his tutelage, a suggestion rejected by the panel.
Dissatisfied with the juiy’s verdict and the rejection of his motion for new trial, Tatham secretly entered upon one of the properties, executed a bogus lease, withdrew, and then, through his lessee, Doe, filed an action in ejectment against Wright, again raising the issue of Marsden’s competence as a testator. A great deal of documentary and testimonial evidence was offered on the issue, including a host of documents that were found among Marsden’s effects upon his death. Among those documents were three letters written to Marsden decades before he made his Will, by persons who knew Marsden but who were long deceased at the time of the trial. Presumably in an effort to rebut Tatham’s claim that Marsden was always incompetent, not just when he drew his 17-page Will and the subsequent Codicil, Wright offered those letters to show that the writers believed, from the nature of the letters, that Marsden was competent at the time the letters were written, from which an inference could be drawn that he was, in fact, competent, not only then, but when he later made his Will and Codicil.
The trial judge, Baron Gurney, rejected the letters, but, of greater significance, he refused to admit the Will unless the sole surviving witness to it — a witness hostile to Wright — was called to testify. Without the Will, the judge directed a verdict for Tatham in the amount of one shilling plus costs, and two exceptions were noted — one dealing with the rejection of the letters and the other complaining of Gurney’s refusal to admit the Will. The appellate court announced that it was divided on the first issue but agreed that Gurney erred in excluding the Will. The judgment was reversed on that ground, without discussion of the letters, and a new trial awarded. Wright v. Tatham, [1834] 1 Adol. & El. 3. At that second trial, Baron Gurney admitted the letters, and the jury found for Wright. That decision also was reversed, the court holding that the letters were inadmissible. At the third trial, Justice Coleridge rejected the letters, a verdict again resulted for Tatham, and exceptions were noted. The six judges of the appellate panel, the Exchequer Chamber, were equally divided, which resulted in an affirmance of the judgment. Wright v. Tatham [1837] 7 Adol. & El. 313, 112 Eng.Rep. 488. The House of Lords, on writ of error, asked for the opinion of seventeen judges, and, on the basis of those opinions, it affirmed.
The implied assertion rule emanates mostly from the opinion rendered by Baron Parke for the Exchequer Chamber — one of six rendered by the judges of that Chamber — for that is the one most often quoted for the proposition that implied assertions, whether or not intended as such, constitute statements for purposes of the hearsay rule.
Parke observed that the basis argued for admitting the letters was that they were evidence “of the treatment of the testator as a competent person by individuals acquainted with his habits and personal character,” that they were “more than mere statements to a third person indicating an opinion of his competence by those persons,” but were “acts done toward the testator by them, which would not have been done if he had been incompetent, and from which, therefore a legitimate inference may, it *325 is argued, be derived that he was so.” Wright v. Doe d. Tatham, supra, 7 Adol. & El. at 383-84, 112 Eng.Rep. at 515. He noted that, although the letters would be admissible to show that they were sent, the contents of the letters were not admissible as “evidence of the fact to be proved upon the issue— that is, the actual existence of the qualities which the testator is, in those letters, by implication, stated to possess.” Id. at 383, 112 Eng.Rep. at 515. For that purpose, he concluded, the letters “are mere hearsay evidence, statements of the writers, not on oath, of the truth of the matter in question, with this addition, that they have acted upon the statements on the faith of their being true, by their sending the letters to the testator.” Id. at 386-87, 112 Eng.Rep. at 515. He rejected the notion that the act of sending the letters overcame the hearsay problem.
As noted, the case then proceeded on writ of error to the House of Lords, which requested the opinions of seventeen judges, among whom were Baron Parke, Baron Gurney, and Justice Coleridge, who thus ended up reviewing their own decisions.
Stoddard, supra, 2005 WL 3309783 (Wilner, J., concurring). Thus, not only did Admiral Tatham concoct the lawsuit that led to the famous opinion by Baron Parke in order to re-litigate a matter which had previously been determined adversely to him by a jury and affirmed by two independent judges, viz., John Marsden’s competence, but the English courts entertained the fabricated case in circumstances in which any American court today would have dismissed it under the doctrine of claim or issue preclusion. Moreover, the precedent which comes down to us in the form of Baron Parke’s opinion was only one of 17 such opinions requested by the House of Lords, and was an affirmance of his own individual decision for an appellate panel of the Exchequer Chamber which had evenly divided (3-3) on the question.
Apart from the fact that Admiral Tatham was permitted to offer evidence in the form of implied assertions (e.g., testimony of a witness who saw young boys taunting John Marsden and yelling “There goes crazy Marsden”), the flaw in the conceptual edifice erected by Baron Parke is the mischaracterization of evidence that is inadmissible because it is not relevant as evidence that is inadmissible as hearsay.[8]
Analyzed in this way, it would seem that any hearsay issue that hinges on an implied assertion would arise only if the declarant intended what he said or did to constitute such an assertion or if the trier of fact would be required, in considering the evidence, to assume such an intent, whether or not it was alleged or shown. If there was no such expressed or necessarily assumed intent — if, in the Wright and Waters context, the declarant did not intend his act or words to convey anything regarding the testator’s competence and there was no basis for a trier of fact to assume such an intent — the act done or words uttered would be inadmissible not because they constituted an implied assertion but because they would be irrelevant; they would not make the fact of the testator’s competence either more or less likely. The act or words would be relevant only if they were intended by the actor, or assumed to be intended by the actor, as an assertion with regard to the testator’s competence, and only in that situation, if the assertion were offered for its truth, would the hearsay rule be applicable.
Stoddard, supra 2005 WL 3309783 *23 (Wilner, J., concurring).
(2)
Having exposed the true basis for the result in Wright v. Tatham, supra and Waters v. Waters, supra Justice Wilner also examined the origins of the Advisory Committee note to Federal Rule of Evidence 801 that explains that the definition of “statement” in Fed.R.Evid. 801(a) “exclude[s] from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless it is intended to be one.” Stoddard, supra 2005 WL 3309783 *25, quoting Advisory Committee note, Fed.R.Evid. 801. As the full Advisory Committee note explains, when an out-of-court declarant commits an act or makes an utterance, without an intent to assert a fact or opinion, simply out of a belief in the existence of the condition sought to be proved and from which belief the condition may be inferred, although the act or utterance, in a sense, represents an assertion of the condition, it should not be regarded as hearsay.
Admittedly evidence of this character is untested with respect to the perception, memory, and narration (or their equivalents) of the actor, but the Advisory Committee is of the view that these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds. No class of evidence is free of the possibility of fabrication, but the likelihood is less with nonverbal than with assertive verbal conduct. The situations giving rise to the nonverbal conduct are such as virtually to eliminate questions of sincerity. Motivation, the nature of the conduct, and the presence or absence of reliance will bear heavily upon the weight to be given the evidence.
Stoddard, supra, 2005 WL 3309783 *25, quoting Advisory Committee note, Fed.R.Evid. 801.
Ultimately, it is fair to say, as Justice Wilner points out in his concurring opinion, that the weight of academic and judicial authority supports the view of the Advisory Committee note that the doctrine of implied assertions as formulated by Baron Parke is not sound.
The reasons for excluding non-assertive conduct from the hearsay rule are persuasive. A principal *326 reason for excluding hearsay is because the veracity of the declarant cannot be tested by cross-examination. In the case of non-assertive acts, the author by definition does not intend to make an assertion, meaning that the risk of insincerity is substantially diminished. The actor is at least not trying to lie. Moreover, non-assertive conduct is usually more reliable than the ordinary out-of-court statement, because by conduct the declarant has risked action on the correctness of his belief — he has put his money where his mouth is.
4 Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, THE FEDERAL RULES OF EVIDENCE MANUAL §801.02[l][c] at 801-15 (8th ed.2002). Accord, 5 Joseph M. McLaughlin, Jack B. Weinstein, and Margaret A. Berger, WEINSTEIN’S FEDERAL EVIDENCE §801.10[2][c] at 801-10 (2nd ed.2005).
“(Ilmplied assertion” is a singularly inept and artificial umbrella term. It requires us to understand “imply” in the weak sense of “suggest” or “indicate,” not in the usual strong sense of describing what a person means to convey. It divorces “assertion” from normal usage, making it mean essentially “evidence” and severing it from expressive or communicative purpose.
If an ordinary letter is an implied assertion that its recipient is competent, then an overcast sky is an implied assertion that rain is in the offing. Absent an intent to express or communicate competence, it is no more illuminating to describe a letter as an implied assertion of this point than it is to describe clouds as implied assertions that it will rain.
Christopher B. Mueller, Post Modern Hearsay Reform: The Importance of Complexity, 76 Minn.L.Rev. 367, 419 n.153 (1992).
In Stoddard v. Maryland, supra, Justice Wilner also points out that nearly all of the federal and state courts to have considered the question “have held unintended ‘assertions’ implied from verbal or non-verbal conduct not to constitute statements for purposes of the hearsay rule.” Stoddard, supra, 2005 WL 3309783 *27 (citing cases) (“The suggestion that there is anything approaching an equal division among the courts is misleading”).[9]
(3)
Commentators favoring the position taken by the majority in Stoddard v. Maryland, supra, sometimes point to the fact that recently the British House of Lords upheld Baron Parke’s formulation of the doctrine of implied assertions as hearsay in Regina v. Kearley [1992] 2 A.C. 228. Interestingly, that case involves facts very much like those in the case at bar. In Kearley, the police searched the defendant’s home and found a quantity of drugs, but not in such a quantity that the intent to distribute versus possession for personal use would be apparent. However, while they were present at his home, the police answered a number of telephone calls from unknown persons asking to speak with the defendant and to purchase drugs. The police were allowed to testify to these calls at the defendant’s trial in an effort to prove possession with the intent to distribute. The Court of Appeals affirmed his conviction, and the question of whether this evidence was hearsay or non-hearsay because it was not offered for its truth but simply to show the words were uttered was certified to the House of Lords.
As Justice Wilner explains in his concurring opinion in Stoddard v. Maryland, supra, the five judges assigned to hear the case voted 3-2 to reverse on the authority of Wright v. Tatham. However, upon closer examination, the result is scant evidence of the soundness of Baron Parke’s reasoning. Three of the five judges (one from the majority and the two dissenters) noted that “Wright was not consistent with modem practice and ought to be at least reconsidered.” Stoddard, supra, 2005 WL 3309783 *29 (Wilner, J., concurring). The stumbling block for the majority judge who thought Wright should be reconsidered was a prior precedent by the House of Lords that any further changes in the law of hearsay should be made by Parliament and not judicially. According to the two dissenters in Kearley:
Unless compelled to do so by authority I should be most unwilling to hold that such evidence should be withheld from the jury. In my view the criminal law of evidence should be developed along common sense lines readily comprehensible to the men and women who comprise the jury and bear the responsibility for the major decisions in criminal cases. I believe that most laymen if told that the criminal law of evidence forbade them even to consider such evidence as we are debating in this appeal would reply “Then the law is an ass.”
Stoddard v. State, supra 2005 WL 3309783 *29 (Wilner, J. concurring), quoting Regina v. Kearley, [1992] 2 A.C. at 236-37. A third judge, Lord Bridge of Harwich, who voted with the majority, expressed an understanding of “the cogency of the reasons advanced in favour of a limitation or exception to the operation of the hearsay rule which would allow the admission of implied assertions of the kind in question,” but voted to the contrary because he felt constrained by precedents which stated that any changes in the law should be made by Parliament. Id., quoting Regina v. Kearley, [1992] 2 A.C. at 251.
Parliament did act by adopting the Criminal Justice Act of 2003 which, in effect, overrules Regina v. Kearley, supra and the doctrine of implied assertions as defined by Baron Parke in Wright v. Tatham, supra. According to Part 11, Chapter 2, Section 115 of the CJA2003, which contains a wholesale revision of the law of hearsay:
115 Statements and matters stated
*327 (1) In this Chapter references to a statement or to a matter stated are to be read as follows.
(2) A statement is any representation of fact or opinion made by a person by whatever means; and it includes a representation made in a sketch, photofit or other pictorial form.
(3) A matter stated is one to which this Chapter applies if (and only if) the purpose, or one of the purposes, of the person making the statement appears to the court to have been-
(a) to cause another person to believe the matter, or
(b) to cause another person to act or a machine to operate on the basis that the matter is as stated.
The official Explanatory Notes[10] that accompany the CJA of 2003, the act was designed to make major changes in the law of hearsay.
48. The common law rule against the admission of hearsay evidence is generally accepted as meaning that “an assertion other than one made by a person while giving oral evidence in the proceedings is inadmissible as evidence of any fact or opinion asserted.” This means that only a statement given by a witness orally in court proceedings is admissible as evidence of the facts as they represent them. The main implication of this rule is that witnesses must give oral evidence in court from first-hand knowledge, and may not repeat what other people have told them. For example:
* Written records are inadmissible evidence of the matters they contain;
* Witnesses must give oral evidence and a written statement cannot be a substitute for their personal appearance in the witness box;
* Witnesses must give evidence from first hand knowledge and may not repeat what other people have told them; and
* Previous out of court oral statements made by the witness themselves are inadmissible evidence of the matters they contain.
49. There are several exceptions to this rule, some of which are found in common law and some in statute. Both the common law rule and the way in which the exceptions operate, however, have been the subject of considerable criticism.
50. This area of the law was the subject of a Law Commission Report Evidence in Criminal Proceedings: Hearsay and Related Topics (Report No 245) in 1997, which included 50 recommendations for reform and incorporated a draft Bill. This area of law was again considered by Sir Robin Auld as part of his Review. Sir Robin Auld concluded that we should move away from the strict rule against the admission of hearsay evidence in criminal proceedings, to a more flexible position where we admit such evidence and instead trust fact-finders to assess the weight of the evidence.
51. The provisions in Chapter 2 of Part 11 are intended, so far as necessary, to codify the law relating to the admissibility of out of court statements in criminal proceedings. They aim to simplify the law and to provide greater certainty as to the circumstances when such evidence will be admitted. The main provisions (in Sections 114 and 115) remove the old common law rule against the admission of hearsay evidence and provide that such evidence will be admissible (on behalf of the prosecution and defence) provided certain safeguards are met (Emphasis added.)
52. Chapter 2 also provides the court with an additional statutory discretion to allow an out of court statement to be admitted as evidence where it would be in the interests of justice to do so. In addition, witness’s previous statements will be more widely admissible at trial (as proof of the facts contained within). Chapter 3 provides that certain witnesses in serious cases may use their video recorded statements in place of their main evidence.
Thus, evidence in the form of telephone calls from unknown callers asking to purchase drugs in circumstances such as those involved in the Kearley case or in the case at bar would not be excluded as hearsay under the new definition of hearsay contained in the Criminal Justice Act of 2003.
II
A
One approach to the definition of hearsay with respect to implied assertions was suggested by Judge Moylan in his opinion for the Maiyland Court of Special Appeals in Stoddard v. Maryland, supra. He posited three categories of “implied assertions”: (1) non-assertive, non-verbal conduct, (2) non-assertive verbal utterances, and (3) assertive verbal utterances offered to prove something other than the thing asserted. Applying the analysis suggested by the Advisory Committee note to Fed.R. 801(a) and followed by Justice Wilner in Stoddard, supra, out-of-court utterances like those involved in the case at bar should be placed in the third category.
(1)
The first category (non-assertive, non-verbal conduct) is explicitly excluded from the definition of hearsay by Fed.R.Evid. 801(a) which provides that “nonverbal conduct of a person” qualifies as a “statement” only “if it is intended by the person as an assertion.”[11] Under this approach, the sea captain hypothetical from Wright v. Tathum, see note 1 supra, and the commonly employed example of a person who testifies to looking out the window and observing one or more persons opening an umbrella are not hearsay because the conduct observed by the witness in each *328 case does not contain an assertion. Instead, it is simply circumstantial evidence of a fact to be proved (in one case, the seaworthiness of the vessel and in the other case that it is raining). Accord, United States v. Hensel, 699 F.2d 18 (IstCir.), cert. den., 461 U.S. 958 (1983) (possession of a “participants’ list” by one of several co-defendants which contained the names of the others was circumstantial evidence of the guilt of the others and not excludable as hearsay because it was not conduct intended as an assertion). As one leading treatise explains:
A satisfactory resolution can be had only by making an evaluation in terms of the dangers which the hearsay rule is designed to guard against, i.e., imperfections of perception, memory and narration. It is believed that such an analysis can result only in rejecting the view that evidence of conduct, from which may be inferred a belief, from which in turn may be inferred the happening of the event which produced the belief, is the equivalent of an assertion that the event happened and hence hearsay. People do not prior to raising their umbrellas, say to themselves in soliloquy form, “It is raining,” nor does the motorist go forward on the green light only after making an inward assertion, “The light is green.” The conduct offered in the one instance to prove it was raining and in the other that the light was green involves no intent to communicate the fact sought to be proved, and it was recognized long ago that purposeful deception is less likely in the absence of intent to communicate.
Even though the risks arising from purposeful deception may be slight or nonexistent in the absence of an intent to communicate, the objection remains that the actor’s perception and memory are untested by cross-examination for the possibility of honest mistake. However, in contrast to the risks from purposeful deception, those arising from the chance of honest mistake seem more sensibly to be factors useful in evaluating weight and credibility rather than grounds for exclusion. Moreover, the kind of situation involved is ordinarily such as either to minimize the likelihood of flaws of perception and memory or to present circumstances lending themselves to their evaluation.
2 McCORMICK ON EVIDENCE §246 (5th ed. West Group 1999) (John W. Strong ed.). Accord, 4 Stephen Salzburg, Michael Martin and Daniel Capra, Federal Rules of Evidence Manual (8th ed.) at 801-14 (“The result of the Ship Captain hypothetical changes under Rule 801. Conduct is not hearsay merely because it is offered to prove the truth of the belief that generated the conduct. Rather, under Rule 801, conduct can only be hearsay if the declarant intended by the conduct to communicate information. The Trial Judge has to determine whether conduct was intended to assert something or not. The Advisory Committee’s Note states that ‘(t]he rule is so worded as to place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility.’ ”); P.S. Milich, Re-Examining Hearsay Under the Federal Rales: Some Methods for the Madness, 39 Kansas-L.Rev. 893, 903 (Opining that the testimony of witnesses that they saw Mary open her umbrella is not hearsay because “the language of Rule 801 (a) (2) points to a result that is at odds with the Wright v. Tatham approach: ‘Nonverbal conduct of a person’ qualifies as a potential hearsay statement only ‘if it is intended by the person as an assertion. Opening an umbrella normally is not intended by the person to be an assertion about anything, and, thus, such nonverbal conduct does not fall within the federal definition of hearsay.”).
(2)
The second category of implied assertions (non-assertive, verbal utterances) also is explicitly excluded from the definition of hearsay by Fed.R.Evid. 801(a)(1) which defines a statement as an “oral or written assertion.” The debate surrounding this category of implied assertions stems from the fact that neither the Federal Rules of Evidence nor the Advisory Committee notes defines what is or is not an “assertion.” Some courts and commentators have erroneously maintained that interrogatories are never assertions and thus utterances in the form of questions are never hearsay. For example, some questions are functionally assertions and are clearly hearsay. Questions such as “Did you know Scott stole my car,” “Why did you stab me, Brutus?” “Do you need change?” or sarcastic responses to questions (when asked if a substance is heroin, the response, “Do cops wear blue”). See Powell v. State, 714 N.E.2d 624, 628 (Ind. 1999).
A question that necessarily assumes a condition will almost always be an assertion of that condition. “Do you think it will stop raining within the hour?” necessarily asserts that it is raining now. The presence of the word “stop” in a. question, or in a command for that matter, is a tell-tale clue of an assertion. It signals the difference between a non-declarative utterance that demands an inference and one that merely suggests an inference. Such assertive questions are, however, rare and they are not hard to identify. The [Advisory] Committee note does not open the floodgates to questions generally and must not be overread. Ordinarily, a question, as a simple request for information, will not be an assertion.
For an utterance to be assertive (and, therefore, to qualify as hearsay) the declarant must intend to assert something.
Stoddard v. Maryland, supra, 157 Md.App. at 269-70, 850 A.2d at 418, reversed on other grounds, 2005 WL 3309783. See, e.g., Inmin v. State, 654 So.2d 86, 90 (Ala.Crim.App. 1994) (testimony that the wife of a defendant who was on trial for theft asked the victim’s *329 former daughter-in-law whether she knew if the victim still kept money was not an assertion and thus not hearsay); Little v. United States, 613 A.2d 880, 882 (D.C.1992) (holding that defendant who shouted, “No, Marvin,” when his co-defendant moved to shoot a security guard did not intend to identify his codefendant as Marvin or make any assertion; thus, the utterance was not a statement for purposes of hearsay rule); Carlton v. State, 111 Md.App. 436, 681 A.2d 1181 (1996) (questions asked by a co-defendant of the witness in a case in which the defendant was on trial for armed robbery and murder about whether the store that was later robbed had an alarm system or when the store owner left at night were not assertions and thus not excludable on grounds of hearsay); Johnson JIM v. Budd, 107 N.M. 489, 760 P.2d 782 (1987) (utterances made by decedent that defendant had done what was requested during the process of making a mechanical repair were directions indicating control and not assertions of fact and thus not excludable as hearsay). When a declarant does not intend to communicate anything, . . . his sincerity is not in question and the need for cross-examination is sharply diminished." 4 Jones on Evidence, supra, §24.13 at 229. See also Park, The Hearsay Definition: To Each His Own, 16 Miss.C.L.Rev. 125, 131 (1995)
It is also important to acknowledge that an assertion is no less an assertion because the statement of fact, opinion or condition is implicit so long as the speaker intended to express the implicit fact, opinion or condition. This point is illustrated by the decision of the Virginia Court of Appeals in Brown v. Commonwealth, 25 Va.App. 171, 179, 487 S.E.2d 248, 252 (1997), where the court held that an utterance by the defendant, following his arrest for breaking into victim’s home and raping her, in which he stated “Does Peggy [the victim] know I’m here?” was hearsay in circumstances in which victim denied knowing him because it was intended to communicate, implicitly, a statement of fact, viz., that the defendant was familiar with the victim.
The distinction between a remark that is intended as an implicit assertion of fact and which for that reason qualifies as a statement for purposes of the hearsay rule and an utterance that is not intended as an explicit or implicit assertion of any fact was explored in State v. Kutz, 267 Wis.2d 531, 671 N.W.2d 660 (2003), rev. den., 269 Wis.2d 198, 675 N.W.2d 804 (2004). In Kutz, the defendant was convicted of murdering his estranged wife whose body was never found. There was evidence that the defendant had made threatening remarks to his wife, had followed her, and was at her place of work on the day she disappeared. On the day she disappeared, she told her mother before she left work to come looking for her if she was not home “in a half hour.” In assessing whether the mother’s testimony about her daughter’s remark should have been excluded at trial, the court rejected the state’s argument that the form of the utterance was determinative. Id., 267 Wis.2d at 564-66, 671 N.W.2d at 677-78 (noting that declarative sentences, commands, instructions, or questions, might, in the circumstances, be assertions and thus statements for purposes of the rule against hearsay).
Based on the inferences that the prosecutor urged the trial juiy to draw, the Court found that the victim’s remark was not offered simply to prove why her mother began looking for her on the day she disappeared, but also to prove that the victim was in fear of the defendant. The defendant maintained that the mother’s testimony also implied that the defendant was a dangerous person. Because Wisconsin, which follows the definition of hearsay found in the Federal Rules of Evidence, did not adopt the Advisory Committee note, the Kutz Court considered several modes of analysis for determining what constitutes an assertion. The Court rejected the approach taken in cases such as United States v. Zenni, 492 F.Sup. 464 (E.D.Ky. 1980), because there, in applying the analysis set forth in the Federal Advisory Committee note, the Court defined assertions as limited to out-of-court utterances in which the speaker’s intent is explicit. Id., 267 Wis.2d at 568-69, 671 N.W.2d at 679. The Kutz Court also rejected the approach of cases such as United States v. Reynolds, 715 F.2d 99 (3d Cir. 1983), in which the analysis turns on the purpose for which the evidence is offered and not on the out-of-court speaker’s intent.
We conclude that the preferable approach is to include within the meaning of “assertion” in Wis. Stat. §908.01(1) an expression of a fact, opinion, or condition that is implicit in the words of an utterance as long as the speaker intended to express that fact, opinion, or condition. From the standpoint of the principles underlying the rule against hearsay, we see no reason to distinguish between an explicit and an implicit assertion. As for determining whether the speaker intends an implicit assertion and if so, what that assertion is, we adopt the framework described in the Judicial Council Committee’s Note and the Federal Advisory Committee’s Note for determining whether non-verbal conduct is intended as an assertion. The burden is on the party claiming that an utterance contains an implicit assertion to show that a particular expression of fact, opinion, or condition was intended by the speaker, and the trial court determines this as a preliminary matter. Sometimes it will be evident from the utterance itself that the speaker necessarily intended an implicit assertion. However, when evidence of surrounding circumstances is needed to resolve the issue, the party claiming an implicit assertion must present that evidence to the trial court.
Kutz, supra, 267 Wis.2d at 570, 671 N.W.2d at 679. Based on this intent-based analytical approach, the *330 court concluded that the trial court had not erred in admitting the mother’s testimony as non-hearsay.
In this case, when the prosecutor stated at the motion hearing that Elizabeth’s instruction to her mother contained a highly relevant inference and defense counsel objected that use of the instruction for that purpose was hearsay, the trial court should have decided what implicit assertion, if any, the instruction contained. Although the trial court did not do so, our independent review of the record persuades us that a reasonable trial court could have concluded that the instruction did not contain an implicit assertion by Elizabeth that Daniel was dangerous. The instruction itself does not necessarily imply the assertion Daniel propounds. That is, the instruction itself necessarily implies that Elizabeth intended to assert to her mother that she wanted her mother to come looking for her if she was not home by 3:45 p.m., but the instruction, in itself, does not necessarily imply any assertion about the reason for her request. It was therefore incumbent upon Daniel to present evidence of the surrounding circumstances to support his position that Elizabeth intended to express to her mother that Daniel was dangerous. It is by no means clear from the submissions that she intended to express that fact. The submissions would support a determination that she intended to express to her mother her fear about what Daniel might do, which is not the same thing as expressing the fact of his dangerousness. The submissions are also consistent with her fearing that he would bother her by insisting on talking her into coming back to him or by following her to prevent her from meeting Stahl — not that Daniel would harm her. Accordingly, we conclude there was a proper basis in the record for deciding that the instruction was not an assertion within the meaning of Wis.Stat. §908.01(1) that Daniel was dangerous.
Kutz, supra, 267 Wis.2d at 571-72, 671 N.W.2d at 680.[12] For other examples of statements in the form of implicit assertions, see Dutton v. Evans, 400 U.S. 74, 77 (1970) (arrested co-conspirator’s statement “If it hadn’t been for that son-of-a-bitch Alex Evans, we wouldn’t be in this now” was hearsay); United States v. Summers, 414 F.3d 1287 (10th Cir. 2005) (a co-defendant’s remark to the police as he was being walked to the police car immediately following the stop of his motor vehicle and his arrest, “How did you guys find us so fast?” was an assertion about his guilt and that of his co-defendants and thus hearsay).
Implicit assertions also may take the form of rhetorical questions. See Powell v. State, 714 N.E.2d 624, 626-29 (Ind. 1999) (the utterance “What you think we ain’t got guns, too” asserted that the men in the group also had firearms). Thus, it is not the form of the words used by the speaker that is determinative, but simply whether the speaker intended to express a fact, opinion or condition. If the answer is “yes” the utterance is an assertion. If the answer is “no,” the utterance is not an assertion. See Falknor, The “Hear-Say” Rule as a “See-Do” Rule: Evidence of Conduct, 33 RockyMt.L.Rev. 133, 136(1961) (observing that when a person makes an utterance in circumstances in which he has no intention of asserting the existence or nonexistence of a fact, the trustworthiness of the evidence does not depend on his sincerity).[13]
(3)
The third category of implied assertions (assertive statements offered to prove something other than the thing asserted) presents the most analytical problems under Fed.R.Evid. 801. As to these utterances, Judge Moylan, writing for the Court of Special Appeals in Stoddard, supra explains that whether the utterance takes
the form of a question, a command, a bit of sarcasm, a statement of something else, [t]he implied assertion may be just as assertive as is a direct assertion. Only the communicative style or rhetorical flourish is different. The thing directly inferred from the words spoken, the thing the declarant intended to communicate, is, by definition, the implied assertion.
Now comes the modem distinction: If the proposition, for which the utterance is offered as proof, is the same as the immediate or direct inference itself, to wit, a first generation implied assertion, the utterance is covered, as it always was, by the hearsay mle. The implied assertion that 1) is itself the probative end product and 2) results from a simple one-step inferential process is (sic) covered by the hearsay mle. The limitation on hearsay coverage introduced by the new mies, a limitation that was not part of the doxology according to Wright v. Tatham, is on the application of the attenuated or multi-step inferential process. If the first generation inference is not the thing ultimately to be proved but is only the predicate for yet another inference one step further removed, the hearsay bar no longer stretches that far.
Stoddard v. Maryland, 157 Md.App. at 276, 850 A.2d at 422, reversed on other grounds, 2005 WL 3309783 (among the examples offered by Judge Moylan as illustrations of implied assertions that should not be regarded as hearsay are (i) testimony by a burglary victim after she was blindfolded that a co-defendant said “Brace, get in here,” offered to prove that defendant Brace was one of the burglars as well as (ii) testimony by a police officer that when she answered the telephone in the defendant’s apartment, a caller said “Have you still got the stuff’ when offered to prove that the defendant was a dmg dealer). This category also includes those cases in which out-of-court statements are offered to explain why the police approached the defendant to avoid the misimpression that the police presence at the scene was simply a *331 matter of chance. See Commonwealth v. Miller, 361 Mass. 644, 659 (1972).
It remains to be seen whether the hearsay rule will be understood, as Judge Moylan posited, to permit the introduction into evidence of an out-of-court utterance to establish an implied assertion that was not the speaker’s direct intent. Also, although some courts have described the out-of-court utterances like those made by the unknown callers in the case at bar and in the Kearney case as verbal acts that involve no assertions and thus not hearsay, a recent article by Dr. Greg Taylor of Monash University, Australia correctly points out the true ground for their admissibility. See Dr. G. Taylor, Two English Hearsay Heresies, 9 The Int. J. Of Evid. & Proof 110 (2005) (hereafter, “Taylor”). First, Dr. Taylor explains that such evidence cannot be admitted as proof that the callers believed that the defendant was a drug dealer because their belief or state of mind is not relevant to any issue in the case. Id. at 113-14. Second, the utterances are not verbal acts because they have no independent legal significance like an offer and acceptance in contract law. Here, the unknown callers are not on trial. Id. at 114. Third, the claim that the utterances do not involve an implicit assertion is plainly wrong “for the assertion, or one of the assertions, implied in such a request is that drugs are available” from the person who is called. Id. Thus, if such evidence is offered to show that the defendant is a drug dealer or that the defendant has drugs for sale it would be hearsay and should be excluded because it would be tantamount to evidence that an out-of-court declarant told the police the defendant was selling drugs. However, the evidence does have a legitimate, non-hearsay purpose, viz., to prove that the drugs possessed by the defendant were possessed with the intent to distribute.
As numerous Commonwealth and American authorities show, it is not [inadmissible] because it is circumstantial evidence from which the accused’s intent in the act of possession can be inferred. Just as we might infer a person’s intention to kill by relying on a statement such as “I hate you, you have caused me untold suffering” in a non-testimonial way, we can infer a person’s intention to sell from assertive statements (and the fact that it is not the accused making them makes no difference to this analysis).
Taylor, supra, at 117.
B
Substituting a test that focuses exclusively on the intent of the out-of-court declarant instead of the purpose for which the evidence is offered does not solve the definitional problems that abound in this area. As Justice Wilner noted in Stoddard v. Maryland, supra,
The debate over how to treat implied assertions arises mostly from the large universe of conduct that conceivably could produce an implied assertion, the debate often focusing on whether the conduct in question was, itself, “assertive.” In some situations, the answer is easy — the nodding or shaking of the head in response to a question, pointing a finger at a suspect, showing four fingers when asked how many shots were fired. That kind of conduct is routinely held to be assertive because, absent some extraordinary circumstance, the court can reliably assume that it was intended by the actor to be an assertion — the functional equivalent of an oral response that would clearly constitute a statement for hearsay purposes.
Other conduct is more ambiguous. Courts, including the trial court in this case, have wrestled over whether a question can constitute an assertion, whether there is any truth or falsity that can be found in a question, and have come to different conclusions. Judges and commentators have raised and discussed dozens of hypotheticals— whether the action of a sea captain who, after inspecting a ship, allows his family to travel on the ship constitutes an implied assertion that the ship is seaworthy, and what, if any, assertion may be implied from the act of a suspect, or a non-suspect, in fleeing during the pendency of an investigation. The notion of implied assertions has become entwined with the state of mind exception to the hearsay rule, with the broader concept of circumstantial evidence from which inferences can be drawn, and with the equally broad issue of relevance, and the ultimate ruling on admissibility can depend on the analytical method chosen by the court to address the issue.
Stoddard v. Maryland, supra, 2005 WL 3309783 *30 (Wilner, J., concurring).
Ill
When the Proposed Massachusetts Rules of Evidence were published in 1980, the Advisory Committee which drafted the rules offered a framework for determining hearsay that mirrors that which was established by the federal rules. Compare Proposed Mass.R.Evid. 801 with Fed.R.Evid. 801. Each rule defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Proposed Mass.R.Evid. 801(c)); Fed.R.Evid. 801(c)). Accord, Commonwealth v. DelVallee, 351 Mass. 489, 491 (1966). The accompanying Advisory Committee Note to the Proposed Massachusetts Rule states that “[t]he definition [of hearsay] includes nonverbal, as well as verbal conduct. However, in order for either to be within the purview of ‘hearsay,’ the statement must be intended as an assertion.”
Although the Supreme Judicial Court has not formally adopted Proposed Mass.R.Evid. 801(c), the proposed rule has been cited with approval. See, e.g., Commonwealth v. Todd, 394 Mass. 791, 797 (1985) *332 (explaining that the destruction of her marriage license could be considered “an extrajudicial, nonverbal assertion of the victim’s intent which, if introduced for the truth of the matter asserted, would be, on its face, objectionable as hearsay; cf. Fed.R.Evid. 801(c); Proposed Mass.R.Evid. 801(c)”; but holding that in the circumstances the evidence was admissible to shed light of the victim’s state of mind) (citation omitted)); Commonwealth v. Baker, 20 Mass.App.Ct. 926, 930 n.3 (1985) (The hearsay rule bars the admission in evidence of extrajudicial statements offered to prove the truth of the matter asserted therein. Proposed Mass.R.Evid. 801(c) and 802. Fed.R.Evid. 801(c) and 802. Both Proposed Mass.R.Evid. 801(a) and Fed.REvid. 801(a) define a “statement” as “(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion”). Additionally, in a number of Massachusetts appellate decisions dealing with hearsay, the reasoning of the Court can best be understood by reference to the distinction between assertive and nonassertive verbal and nonverbal conduct. See, e.g., Commonwealth v. Gonzalez, 443 Mass. 799, 803 (2005) (“[C]onduct can serve as a substitute for words, and to the extent it communicates a message, hearsay considerations apply. Thus, as the defendant argues, if the defendant were not present, Susie’s testimony about the reenactment [of a shooting with which the defendant was charged] would be hearsay. But if the defendant were present, the testimony is not inadmissible hearsay. Crediting the testimony of Melissa that the defendant was present has the effect of rendering what would have been inadmissable hearsay an adoptive admission of the defendant and thus admissible against him.”); Commonwealth v. Montanez, 439 Mass. 441, 447-48 (2003) (evidence of the victim’s statement to her friend was properly admitted to establish the victim’s state of mind (fear of defendant) which helped explain her delay in reporting an episode of sexual abuse and thus was not hearsay; “statements may be offered as evidence of state of mind and without implicating the hearsay rule if the statements either do not contain assertions or are offered without regard to whether the assertions are true”) (quoting Massachusetts Evidence, supra, §8.2.6); Commonwealth v. Ashman, 430 Mass. 736, 742-43 (2000) (explaining that testimony by friends of the victim that the defendant had abused her in the past was not admissible because it amounted simply to out-of-court “statements” [that is, assertions] offered for their truth and did not fall into the state-of-mind exception to the hearsay rule because there was no evidence of the defendant’s awareness of them); Commonwealth v. Lydon, 413 Mass. 309, 314 (1992) (out-of-court nonverbal conduct offered to prove an assertion is hearsay); Charette v. Burke, 300 Mass. 278, 281 (1938) (father’s remark to a child before leaving the child to go into the house (“Wait where you are while I go inside to get you a cookie”) was a “verbal act” and not hearsay); Weeks v. Boston Elevated Ry. Co., 190 Mass. 563 (1906) (witness permitted to testify that decedent remarked that “the carriage never rode so hard before”; utterance about a present condition is not hearsay because it is not an assertion unlike a narration about past pain); Bartlett v. Emerson, 7 Gray 174 (1856) (testimony about another person’s act of pointing out a boundary marker was an assertion of a fact and thus inadmissible as hearsay); Shimer v. Foley, Hoag & Eloitt, LLC, 59 Mass.App.Ct. 302, 310 (2003) (evidence of the terms of a contract used to establish lost profits is not hearsay because it is not an assertion) ; Commonwealth v. Ramiriz, 55 Mass.App.Ct. 224, 227 (2002) (a business card offered to establish a connection between the defendant and a New York address on the card was hearsay because it was used as an assertion of a fact); Commonwealth v. Daley, 55 Mass.App.Ct. 88, 94 n.9 (a passerby’s remark [“Are you all right?”] if offered as an assertion that the victim was in distress would be hearsay, but if offered to explain why the defendant fled, and thus not as an assertion, would not be hearsay); Mailhiot v. Liberty Bank and Tr. Co., 24 Mass.App.Ct. 525, 529 n.5 (1987) (instructions given to the plaintiff by bank examiners about how to handle a problem were not assertions and thus not hearsay).
This distinction is at the heart of Chief Justice Shaw’s definition of the rule against hearsay in Warren v. Nichols, 47 Mass. (6 Metc.) 261, 264 (1843): “[t]he general rule is, that one person cannot be heard to testify as to what another person has declared, in relation to a fact within his knowledge, and bearing upon the issue.” A declaration of a fact is simply another way of describing as assertion of a fact. As the Supreme Judicial Court observed in Commonwealth v. Fiore, 364 Mass. 819, 824 (1974), it is only when out-of-court utterances are offered “for a special purpose, namely, as assertions to evidence the truth of the matter asserted,” that they are hearsay.[14] Cf. Commonwealth v. Weichell, 390 Mass. 62, 72 (1983) (noting that one rationale for admitting a composite drawing of the suspect made by a witness before the trial is that such evidence is not a “statement” for purposes of the hearsay rule). See G.M. Tuoni, Hearsay: Its Application in Massachusetts and Federal Courts, 73 Mass.L.Rev. 100, 101 (1988).
IV
A
Courts are not all in agreement about how to assess the type of out-of-court utterances involved in this case when challenged as hearsay. However, the near universal rule in state and federal courts is that evidence of out-of-court utterances from persons who appear to be ordering or arranging for the delivery of illegal drugs by telephoning the number of a cell phone or pager seized from the defendant following his arrest for the illegal distribution of drugs are admissible over a hearsay objection. See, e.g., United States v. Groce, *333 682 F.2d 1359, 1364 (11th Cir. 1982); United States v. Jaramillo-Suarez, 950 F.2d 1378 (9th Cir. 1991); United States v. Jackson, 88 F.3d 845, 848 (10th Cir. 1996); United States v. Long, 905 F.2d 1572, 1579-80 (D.C. Cir.), cert. den., 498 U.S. 948 (1990); United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990); United States v. Ogwis, 921 F.2d 442 (2d Cir. 1990); People v. Morgan, 125 Cal.App.4th 935, 23 Cal.Rptr.3d 224 (2005); State v. Tolisano, 136 Conn. 210, 70 A.2d 118 (1949); People v. Black, 2004 WL 2348264 (Mich.App. 2004); State v. Collins, 76 Wash.App. 496, 886 P.2d 243 (1995), rev. den., 126 Wash.2d 1016, 894 P.2d 565 (1995). It also is the Anew adopted by at least three of the major evidence treatises. See 5 Weinstein’s Federal Evidence at 801-10 to 801-11 (2d ed. 2005) (McLaughlin ed.); 4 Jones on Evidence §§23.13-23.14 (7th ed. Professor Clifford Fishman 2000); 2 McCormick on EA/idence §246 (5th ed. John W. Strong 1999). [15] See also C. Mueller, Incoming Drug Calls and Performative Words: They’re Not JustTalking About It, Baron Parke! 16 Miss.C.L.Rev. 117 (1995); R.C. Park, “I Didn’t Tell Them Anything About You": ImpliedAssertions as Hearsay Under the Federal Rules of Evidence, 74 Minn.L.Rev. 783 (1990)..
The predominant Anew rejects the claim that such utterances are hearsay on grounds that the caller asking for drugs or asking about a delivexy of drugs is not making an assertion about anything, and, thus, there is no “statement” for purposes of the hearsay rule. However, as shoAvn above, this approach runs afoul of the better reasoned analysis that the distinction between what is assertive and what is non-assertive should not be made to turn on the form of the words used. When someone calls a telephone number and orders drugs, they are intending to assert something, albeit implicitly, namely, that the caller has bought drugs from this person or location in the past, that the caller believes this person sells drugs, or that the caller believes the location is one from which drugs may be purchased, or all three. The analysis, must instead, consider whether there is some non-hearsay purpose for offering the evidence.
It is necessaiy to be quite clear here about (a) what is to be proved, and (b) the manner of its proof, bearing in mind that (a) whatever it is that is to be proved (b) cannot be proved by hearsay (a forbidden manner of proof). Let us therefore first ask ourselves: what is to be proved by this evidence? A number of answers could be given, such as “the truth of the assertions (express or implied) that the callers had received drugs from the accused in the past,” or “that the callers believed that the accused was drug dealer.” In both cases the evidence should not be admitted: in the first case because it would relate to mere propensity, and in the second case because it would relate to an irrelevant opinion. But the evidence may also be tendered to prove the intent of the accused in possessing the drugs, a relevant issue because an element of the offense. In drug-dealing cases, the fact that the accused receives telephone calls asking for drugs is admitted as circumstantial real evidence of intention — just as lists of telephone numbers and amounts of money owed by various people (containing express assertions) are also routinely admitted in such cases, or exclamations containing assertions in murder cases.
But, of course, such evidence could not be given by hearsay, so that a conversation narrating a past transaction (in some non-incriminating context) clearly could not be admitted. But the assertions of customers are relevant to the intent of the accused not because they narrate past events (and some may not); nor are they relevant for what they assert (recall the racing guides and betting slips). Rather, they are also relevant because they are circumstantial evidence from which the intent of the accused in possessing the drugs can be inferred. The evidence is no different in this respect from evidence that police officers, observing the accused from a distance, saw him hand over packages to people in return for money, but were unable to hear any words that were spoken, or from the racing guides and betting slips. The proposition on which the CroAvn seeks to rely in tendering the telephone calls is not that particular statements were made, but rather “that customers seeking drugs existed.” The fact that they sought drugs using language (there are, after all, few available alternatives) does not detract from the probative value and non-hearsay nature of the evidence that customers keep turning up. In fact, in most cases it Avill not be necessaiy, in order to show the accused’s intention, to prove the precise words of the callers at all, merely that they existed, how many of them there were and the general nature of the requests they made.
Taylor, supra at 118.[16]
With an understanding of the central role played by the concept of an assertion in the definition of hearsay, that the form of the words used by the speaker is not determinative of whether an utterance is or is not an assertion, and that the purpose for which the evidence is offered may be determinative, out-of-court statements like those involved in the case at bar should not be regarded as verbal acts not intended as assertions as in Charette v. Burke, supra or as verbal utterances that are not assertive as in Bacon v. Inhabitants of Charlton, 61 Mass. (7 Cush.) 581 (1851) (holding that when a witness testifies that the plaintiff groaned or expressed pain or distress when moving or engaging in some particular act the out-of-court utterance is not hearsay because it is not an assertion of a fact), but rather as statements offered for a purpose other than their truth.
*334 B
On balance, an approach to the problem of hearsay which focuses on whether the utterance represents an explicit or implicit assertion of a fact, opinion or condition, and then, if it does examines the purpose for which it is being offered into evidence makes the most sense and is consistent with Massachusetts cases.[17] “The intent-based approach focuses on what the out-of-court declarant intended to assert, and then asks whether that intended assertion has been offered for its truth at trial. If the utterance is not an assertion at all, it is not hearsay . . . Evidence that implicates the sincerity of an out-of-court declarant is hearsay; evidence that does not implicates the sincerity of an out-of-court declarant is not hearsay.” P. Kirgis, Meaning, Intention and the Hearsay Rule, 43 William & MaryL.Rev. 275, 283-84, 285 (2001). See Commonwealth v. Kirk, 39 Mass.App.Ct. 225, 229-30 (1995) (conduct of a police officer who served a restraining order on the defendant offered to establish the identity of that person as the perpetrator was hearsay because its probative value depended on the truth of an assertion made in the papers by the victim that the defendant was the same person named in the complaint).
When presented with a motion in limine such as in this case or when ruling on an objection at trial, the judge must engage in a multi-step analysis.[18] The court must determine, as a preliminary question of fact, see Commonwealth v. Jensky, 318 Mass. 350, 352[19] (1945), Advisory Committee Note to Fed.R.Evid. 801(a), whether the utterance in question was made. If the answer is “no,” the utterance is not admitted. If the answer to question one is “yes,” the court must also determine whether the declarant intended it as an assertion of a fact, opinion or condition. The grammatical form of the utterance is not determinative, and an assertion is no less so because the statement of fact, opinion or condition is implicit. If the answer to question two is “yes” (as in the present case), it is hearsay and not admissible unless it falls into a recognized exception to the hearsay rule or is offered for some reason other than its truth. If such evidence is admitted for a reason other than its truth, a limiting instruction should be given to the jury to insure that the evidence is not used for its truth by the juxy. If the answer is “no,” the utterance is not hearsay. However, even though it is not hearsay, the admission of the utterance depends on the answer to a third question— does the utterance have probative value based on the purpose for which it is offered,[20] or is it so vague and ambiguous that it should be excluded.[21] See Cornmonwealthv. Jensky, 318 Mass.350,354 (1945); Proposed Mass.R.Evid. 104(a). See also State v. Kutz, 267 Wis.2d 570, 671 N.W.2d 660, 680 (2003), rev. den., 269 Wis.2d 198, 675 N.W.2d 804 (2004). If the evidence is not excluded for any of the above reasons, the judge additionally must determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect, or because it will confuse or mislead the jury. See Proposed Mass.R.Evid. 403.
CONCLUSION
In the present case, the defendant does not challenge that the utterances were made by unknown callers to the police in the circumstances described by the Commonwealth. Although the unknown individuals were simply inquiring about or placing orders for drugs, it is inaccurate to say that they did not intend to assert a fact, opinion or condition, directly or implicitly. If these statements were offered or received for their truth, they would be tantamount to statements of unknown persons expressing an opinion that the defendant sold drugs in the past, or was a drug dealer, and would be excludable as hearsay. Instead, the utterances are relevant not to prove the truth of any such assertions, but rather as circumstantial evidence that the person with the cell phone had the intent to distribute drugs and not simply to possess them for personal use. Nothing in the record before the court suggests that the probative value of this circumstantial evidence is substantially outweighed by its prejudicial effect.[22] Moreover, the fact that these utterances are not being offered for their truth means that they are not “testimonial” evidence in any sense and their admission does not implicate the Confrontation Clause and the recent decisions in Crawford v. Washington, 541 U.S. 36 (2004), and Commonwealth v. Gonsalves, 4445 Mass. 1 (2005). Compare Commonwealth v. Daye, 393 Mass. 55, 80 (1984) (Liacos, J. dissenting) (‘The right to confrontation is basically a trial right. It is designed to make prosecution witnesses available for full cross-examination by the defendant and to ensure that the testimony of a witness is given under oath before the jury who will have an opportunity to observe the demeanor of the witness as he testifies.”).
Order
For the foregoing reasons, the Commonwealth’s motion to admit evidence at trial consisting of the conversations between police officers and unknown telephone callers following the defendant’s arrest is ALLOWED.

 Professor Hughes treats cases like the one at bar as examples of “verbal conduct” and states that “Massachusetts has followed a liberal policy of admissibility with respect to evidence of certain forms of conduct, which is offered to prove circumstantially the belief of the actor, as to a past fact, from which belief the truth of the fact may be further inferred. Where the proved conduct is that of a non-party, obviously, no question of implied admissions could arise. In these situations, our court rejects the hearsay objection, viewing such evidence as offered for a non-hearsay purpose.” Hughes on Evidence, supra, §456 at 608.

 In Wright v. Tatham, Baron Parke used a hypothetical to illustrate his definition of an implied assertion that itself has become almost as famous as the case itself. On the issue of whether a ship was seaworthy, the hypothetical evidence was that its captain thoroughly inspected the ship and then boarded it for a long sea voyage accompanied by his wife and children. The reasoning that leads to the view that this *335 evidence is hearsay consists of two steps: first, it may be inferred from the captain’s actions that he believed the ship to be seaworthy: second, it could , in turn, be inferred from this belief that the ship was in fact seaworthy.

 Insofar as Fed.R.Evid. 801(a)(2) expressly states that nonverbal conduct not intended by the person as an assertion is not hearsay, it overrules the broad, common-law view of implied assertions as hearsay expressed in Wright v. Tatham, supra The question remains, however, whether out-of-court, verbal utterances, which constitute or contain implied assertions of other facts which may not have been intended by the declarant, are hearsay. Put differently, is the omission of an express reference to “intent” in Fed.R.Evid. 801(a)(1) significant? The maj ority view of federal and state courts which have considered the question, is “no.” See State v. Stoddard, supra, 2005 WL 3309783 *27 (Ct.App.Md. 2005) (Wilner, J„ concurring), and cases cited.

 As explained by Justice Raker in his opinion for the majority in Stoddard, Maryland did not adopt the Advisory Committee note that accompanies Fed.R.Evid, 801. In Maryland, the Committee note to the rule against hearsay, Md.R. 5-801, states that the concept of an “assertion” is not defined but “left to the development in case law.” Stoddard, supra 2005 WL 3309783. From this, the majoriiy concludes that Maryland law does not accord with the view of the federal Advisory Committee note that “nothing is an assertion unless intended to be one.”

 In Stoddard, Justice Raker added this brief test to determine whether an out-of-court utterance or act qualifies as hearsay: “[a] reasonable test is to ask whether the words would remain probative if it could be established that the declarant did not believe the factual proposition for which they are offered.” Stoddard, supra 2005 WL 3309783 n.5 (emphasis original). If we assume in the case at bar that the persons who called the defendant’s cell phone were only joking about ordering drugs, the evidence would not be admissible because it would have no probative value. However, in most, if not all cases, it will not be possible to know whether the caller is sincere or not. However, as will be seen infra the probative value of this evidence does not depend on our knowledge of the caller’s sincerity

 Justice Wilner also relied on reservations about the competency of the young child as a witness to conclude that the out-of-court utterances should have been excluded.

 Justice Wilner includes an interesting footnote in his account of Wright v. Tatham supra in which he notes that the decision dismissing Admiral Tatham’s bill with costs contains this observation by the Lord Chief Justice of the Common Pleas and the Lord Chief Baron: “Not satisfied with alleging that the testator was not of sound and disposing mind, [the bill] brought forward a pretended case of gross fraud and undue influence, most injurious to the character of the Defendant Wright; every part of that case had failed: and it had been established by the verdict of a jury, approved of by the judge before whom the issue was tried, and ratified by two judgments of this Court, that the will, which the Plaintiff sought to impeach, was the deliberate and valid act of a testator of sound and disposing mind.” Stoddard, supra, 2005 WL 3309783 (Wilner, J. concurring), quoting Tatham v. Wright [1831] 2 Russ. & Myline 1, 31.

 Justice Wilner illustrates this point by quoting from an old Maryland case which cited Wright v. Tatham and which the majority relied upon in concluding that Baron Parke’s dictum was still the law in Maryland. In Waters v. Waters, 35 Md. 531 (1872), a will contest, the Court of Appeals cited Wright v. Tatham in excluding letters offered to prove the testator’s competence. However, in explaining the result, the Court of Appeals indicated that the true ground of the decision was more basic:
[LJetters of third persons addressed to a party, are not of themselves any evidence of the mental capacity of the party to whom they are addressed; and are not admissible for that purpose, unless it be shown that they came to him, and that he exercised some act of judgment or understanding upon them; and then they are admissible merely as inducement, or as connected with the acts of the party, whose competency or mental capacity is in dispute, and which the letters may serve to elucidate or explain. It is what he has done or said upon the occasion, and not what has been done or said by others, that is pertinent to the question in issue.
Stoddard , supra, 2005 WL: 3309783 *21, quoting Waters, supra 35 Md. at 544.

 Respected academic writers on the law of evidence, however, continue to disagree with the position taken by the Federal Rules of Evidence and most courts with respect to the status of implied assertions. See, e.g., Paul R. Rice, Back to the Future With Privileges: Abandon Codification, Not the Common Law, 38 Loy.L.A.L.Rev. 739, 765-67 (2004) (describing the modem view as “nothing less than absurd”); Paul R. Rice, Should Unintended Implications of Speech be Considered Nonhearsay? The Assertive/Nonassertive Distinction Under Rule 801 (a) of the Federal Rules of Evidence, 65 TempleL.Rev. 529 (1992) (maintaining that when the relevance or probative value of an out-of-court utterance only if one believes the truth of the matter explicitly or implicitly asserted it should be regarded as hearsay and should be exluded unless it is admissible under an exception to the hearsay míe); O.G. Wellborn, The Definition of Hearsay in the Federal Rules of Evidence, 61 TexasL.Rev. 49, 66 (1982) (Tracing the historical development of the rule against hearsay, noting that the Federal Rules of Evidence clearly sought to liberalize the mle in favor of the admission of statements and nonverbal conduct which would have qualified as hearsay at common law, and observing that “[o]ne must conclude, therefore, that the case for nonhearsay treatment on grounds of reduced hearsay risks, weak and unpersuasive as it is when advanced regarding nonassertive nonverbal conduct, is even weaker for non-assertive verbal conduct and assertions used inferentially. Indeed, it is fair to say that no basis at all exists for distinguishing these categories from direct assertions in terms of the hearsay dangers presented.”). See also Ted Flnman, Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence, 14 Stan.L.Rev. 682 (1962). As noted in the text infra in the case at bar, the evidence would be hearsay if offered for its truth.

 According to the British Office of Public Sector Information (OPSI), “[w]ith effect from the first Public General Act of 1999, all new Public Acts which result from Bills introduced into either House of Parliament by a Government Minister (with the exception of Appropriation, Consolidated Fund, Finance and Consolidation Acts), are to be accompanied by Explanatory Notes. The text of the Explanatory Notes will be produced by the Government Department responsible for the subject matter of the Act. The purpose of these Explanatory Notes is to make the Act of Parliament accessible to readers who are not legally qualified and who have no specialised knowledge of the matters dealt with. They are intended to allow the reader to grasp what the Act sets out to achieve and place its effect in context.” See http://www.opsi.gov.uk/legislation/uk-expa.htm.

 Proposed Massachusetts Rules of Evidence, Rule 801(a) contains the same definition.

 In Kutz, the Court explained that it was incumbent on the defendant to request a limiting instruction to prevent the state from using the evidence to urge the jury to draw an inference that was not warranted. 267 Wis.2d at 572, 671 N.W.2d at 680.

 In some cases, however, the answer will turn on the circumstances. See, e.g„ N.M. Garland, “An Overview of Relevance and Hearsay: A Nine Step Analytical Guide, " 22 Sw.U.L.Rev. 1039, 1050 n.42 (1993) (discussing the example of testimony by a bank president who offers someone the position of Chief Teller introduced to prove circumstantially the person was skilled and possessed the character traits of honesty associated with a teller: this is correctly regarded as a nonassertive utterance unless there is reason to believe that the bank president was engaged in some sort of deception to benefit himself, the teller, or someone else).

 This is the reason why the utterances made by a prostitute to a police officer about her work and the defendant’s role in the criminal activity in Commonwealth v. Lopera, 42 Mass.App.Ct. 133 (1997), were properly excluded as hearsay. Contrast, Commonwealth v. Mullane, 63 Mass.App.Ct. 317 (2005).

 The problem is treated as an example of non-verbal, non-assertive conduct in W.G. Young, J.R. Pollets, and C. Poreda, Massachusetts Evidence Law §801.5 (2d. Ed. 1998), where the authors follow the rule enunciated by Professor Hughes. See note 1 supra. The treatise cites Massod, supra, and Commonwealth v. Jensky, 318 Mass. 350 (1945), as examples of this Massachusetts practice. See also Silver v. New York Central R.R., 329 Mass. 14, 19-20 (1952) (in a case for personal injuries allegedly suffered by a railway passenger due to the cold temperature on the railway car during a layover, it would be competent to permit the porter to testify that 11 other passengers in the car made no complaint).

 The author also explains that the admissibility of these out-of-court declarations for the non-hearsay purpose of shedding light on the defendant’s intent is sometimes described differently in different jurisdictions. ‘The evidence is offered up as a package to prove the character of the place or the business being carried on there [Canada]; the fact that an inquiry or offer relating to the sale of drugs was made [Australia]; not to prove that the statements made in them were true, but as evidence of illegal activity [United States].” Taylor, supra at 119.

 “Definitions of hearsay are either assertion-centered or declarant-centered. Under an assertion definition, an out-of-court statement is hearsay when offered in evidence to prove the truth of the matter asserted. Under a declarant definition, an out-of-court statement is hearsay when it depends for value on the credibility of the declarant.” R.C. Park, “I Didn’t Tell Them Any thing About You": ImpliedAssertions as Hearsay Under the Federal Rules of Evidence, 74 Minn.L.Rev. 783 (1990) (author suggests that most hearsay scholars have preferred the declarant definition, that the Federal Rules of Evidence and modem caselaw favors the assertion definition, that rigorous application of the. declarant definition would result in the exclusion of out-of-court utterances that are now regarded as admissible, that satisfactory results can be achieved under the assertion definition, and that “[a] perfect hearsay definition is unattainable”).

 A good illustration of the analytical approach that should be used in such cases is provided by tire Court of Appeals of Kentucky in Estes v. Carpenter Co., 2004 WL 2633544 (2004), rev. den., _Ky._ (2005). In Estes, the plaintiff alleged he had been assaulted by several men who had been sent after him by the defendant corporation and several of its managers. During the first alleged assault, the plaintiff said he heard one of the attackers say, “go tell Dougie we have got him.” During the second assault he said one of the attackers told him “Doug Boullack has sent you a Christmas present.” During the third attack, he said one assailant said ‘fyou know the drill." Allegedly, after each assault, he was forced to drink a medication that caused him to lose consciousness. After indicating its general agreement with the approach taken by the Advisory Committee note to Fed.REvid. 801, the court offered this analysis:
We must now consider whether the particular utterance, “Go tell Dougie we have got him,” makes an implicit assertion and, if so, what it is. The implicit assertion that “we [the assailants] have got him [Estes],” appears to be an obvious and intentional assertion by the speaker. However, Estes did not seek to offer this statement for its truth, to show that the assailants had control over him. The exclusion of this particular implicit statement as hearsay was erroneous. But because this statement does not assist Estes in establishing the needed link between Bullock and Carpenter, it is harmless error.
Estes asserts that the assailant’s reference to “Dougie,” as in “Go tell Dougie . . .” is the equivalent of the assailant stating that “Dougie sent us.” The circuit court seems to have accepted this as true. It held that the statement was inadmissible because it was offered for the truth asserted, to show that Doug Bullock was behind the attack. The conclusion that this passing reference to Dougie was intended by the speaker to implicitly assert that Bullock was behind the attack is by no means a foregone one. Some courts have held that a speaker’s reference to another’s name does not ordinarily demonstrate intent on the part of the speaker to identify or introduce that other person. However, we note that the meaning of this particular utterance must be considered in light of all the surrounding circumstances. Estes asserts that the same assailant spoke all three utterances at issue. Given the commonality of the attacks, and the fact that the speaker was allegedly the same in each instance, it is not illogical to examine the other utterances for any light that they may shed on the speaker’s intent in referring to “Dougie” in the first assault. During the second assault, the assailant expressly tried to place blame on Bullock, saying, “Mr. Estes, Doug Bullock has sent you a Christmas present.” In light of this demonstrated intent to implicate Doug Bullock, it is possible to interpret the same assailant’s words in the first assault, “Go tell Dougie we got him,” as revealing the same intent. While we might not have reached the same conclusion, under these circumstances, we cannot say that the circuit court’s conclusion — that the assailant uttering, “Go tell Dougie we got him,” intended to assert that “Dougie [Doug Bullock] sent us” — is clearly erroneous. Given this fact, we find that the circuit court properly excluded this statement as inadmissible hearsay since Estes sought to offer it for the truth of the matter, as proof that the assailants were sent by Doug Bullock.

 This could be a matter of critical importance in a case in which there are several people involved and a dispute as to whether the defendant had exclusive or even joint possession of the drugs that were seized by the police.

 It is possible that in circumstances like those involved in this case, the evidence will be excluded because the court may not be satisfied that the expert opinion of a law enforcement officer establishes that the words uttered by the unknown telephone caller are circumstantial evidence of criminal activity. For example, in a case such as this, if the police return cell phone calls received by the phone seized from the defendant and the caller asks for “a dozen widgets,” unless there is credible evidence that such a phrase is a reference to illegal drugs the evidence is not admissible.

 For example, the burden should be on the proponent of the evidence to establish that it is what it is represented to be, i.e., if the caller makes inquiry about purchasing something, picking up something, a delivery of something, or the availability of something, the proponent must persuade the court that any jargon used by the caller has a direct reference to contraband. In the present case, for example, the Commonwealth has the burden of establishing that the reference to a “bundle” is a reference to drugs.

 This is a question that can be revisited at the trial.